THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES MOORHEAD, Defendant-Appellant.

(No. 57576; ▮▮▮)

First District (2nd Division)—February 5, 1974.

Gerald W. Getty, Public Defender, of Chicago (John T. Moran, Jr. and James N. Gramenos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Elmer C. Kissane, Ronald Mendes, and Mark Zubor, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, James Moorhead, was found guilty after a bench trial of the offense of unlawful possession of a narcotic drug, in violation of section 22—3 of the Criminal Code,[1] and was sentenced to a term of four years and one day. He contends on this appeal that the trial court committed reversible error in failing to suppress evidence seized from him without a warrant, after an allegedly improper arrest.

In his motion and supplemental motion for "probable cause" (as captioned by defendant), filed pro se in this matter, the defendant alleged that on April 29, 1969, he was stopped in the 2100 block of West Madison

---

[1] Ill. Rev. Stat. 1967, ch. 38, par. 22—3.

Street by the Chicago police who found a quantity of heroin in the defendant's pocket and thereafter searched and arrested him. Defendant further alleged that at the hearing held to determine whether probable cause existed for his arrest, the police officer testified they had stopped defendant based on information that a cleaning store had been robbed and a general description of the robber which they had received. Defendant stated he had never been arrested for, questioned, or charged with robbery.

Defendant also filed a motion to suppress physical evidence alleging that he had been searched and a quantity of a narcotic drug taken by the police without any warrant or authority.

The trial court conducted a hearing on these motions, prior to trial, eliciting the following testimony.

Defendant testified that he was arrested at about 4:00 P.M. on April 29, 1969, at Madison Street and Hoyne Avenue, and that as one uniformed police officer held a gun on him, a second officer took his "stuff" out of his pocket while he held his hands in the air. The defendant was carrying a sweater over one arm. He further testified that he had earlier been walking westerly along Madison Street, but that he was walking easterly when he was placed under arrest. He testified that one of the officers stated, "Hey you," that he did not turn around but did look over his shoulder and saw the officers, and that he then turned and stopped. The witness also testified that he had one hand in his pocket and one hand free.

Officer Ralph Gibson, of the Chicago police, testified that on the date in question he and his partner were working in a marked police vehicle on an assignment involving the armed robbery of several cleaning stores in the area; that he observed the defendant, who matched the general description of the robbery suspect, walking on the street; and that the defendant was carrying a sweater over his arm, leading the officer to believe that defendant was going to a cleaning store. The officer observed the defendant look at the officer, turn abruptly, and proceed in the opposite direction. The officer wished to get a better look at the defendant, who had turned around in a crowd of people, the officer being unable to better observe him. The officer alighted from the vehicle and called for the defendant to wait. The defendant looked over his shoulder but continued walking; the officer again called to the defendant; the defendant stopped, turned toward the officer, and held the sweater he was carrying in front of him in a "covering" manner while reaching into his rear pocket with the hand of the other arm. The officer told the defendant to remove the hand from the pocket but the defendant did not comply; the officer unholstered his gun and again asked defendant to remove his

hand and again the defendant failed to comply; the officer then took hold of the defendant's hand while still in the pocket, at which time the defendant was turning away from him. The officer testified that he did not intend to arrest the defendant when he initially observed him on the street, but that when the defendant placed his hand into his pocket after being summoned by the officer, it "became something else and that is what I arrested him for." According to Gibson, the defendant was placed under arrest for refusing to remove his hand from his pocket (at which point, the officer stated, defendant had not yet stopped walking) and for the officer's own personal safety.

When the officer removed the defendant's hand from the pocket after having taken hold of it, the defendant was holding a brown paper package containing 10 tinfoil packets of white powder, and defendant was told that he was under arrest. (The packets according to stipulation at the bench trial contained 2.1 grams of heroin.)

Gibson recalled that he had testified at a preliminary hearing that he stopped the defendant while he was cruising in the area and looking for a man wanted for the robbery of a cleaning store which had taken place about an hour before the arrest; the defendant was placed under arrest about 5:00 P.M. on that date, but the aforementioned robbery in fact took place about 2:15 P.M. at 759 South Kedzie Avenue rather than at a location three to four blocks from where the arrest took place, as the officer had testified at the preliminary hearing. The officer admitted that the man who had committed the aforementioned robbery had been apprehended inside the store and he stated that at the time that he arrested the defendant he was not aware that that other man had been apprehended. The officer denied arresting the defendant specifically in connection with the aforementioned cleaning store robbery and he stated that defendant was stopped to determine if he fit the description of the suspect wanted in connection with the entire series of robberies. The officer testified that he felt that there was a possibility that the defendant was the man who had committed the aforementioned cleaning store robbery; that the defendant fit the general description of that man; and that the officer did not "take sufficient evidence at that time to place him under arrest [sic]."

Defendant was recalled in rebuttal and testified that after he was stopped he was not questioned about the cleaning store robberies; that he was never placed in a line-up; and that he was advised of his constitutional rights. (It was stipulated that the evidence taken at that hearing would stand as the evidence in the bench trial of the matter.)

On appeal defendant takes the position that at the point when Officer Gibson restricted the defendant's freedom of movement, the arrest was

complete. Correspondingly, he argues there was no probable cause for his arrest and thus the search of his person cannot be justified as an incident of a valid arrest.

An "arrest" is "the taking of a person into custody" (Ill. Rev. Stat. 1969, ch. 38, par. 102—5) and is accomplished "by an actual restraint of the person or by his submission to custody" (Ill. Rev. Stat. 1969, ch. 38, par. 107—5(a)). We have previously discussed the question of "arrest" and the many legal principles involved in *People v. Howlett* (1971), 1 Ill. App.3d 906, 274 N.E.2d 885.

The problem is analyzing the facts in each case in order to determine the correct legal category applicable to such facts. From the testimony contained in the record we do not believe that the officers' detention of the defendant can be properly called an arrest within the meaning of our State's statutes. Rather, their conduct amounted to temporary questioning without an arrest as defined by our legislature, to wit:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time *when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code,* and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Emphasis supplied.) Ill. Rev. Stat. 1969, ch. 38, par. 107—14.

The authority to search a person so stopped and the scope of that search is likewise defined:

"When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and *reasonably suspects that he or another is in danger of attack, he may search the person for weapons.* If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." (Emphasis supplied.) Ill. Rev. Stat. 1969, ch. 38, par. 108—1.01.

These statutes represent a codification of the holdings in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889 (*People v. Lee* (1971), 48 Ill.2d 272, 269 N.E.2d 488) and thus the actions of the police officers in this case must be analyzed, not in terms of the existence or absence of probable cause, but according to the standards set out by the Supreme Court in *Terry.*

For purposes of clarity our resolution of the issue before us will be

based upon a twofold inquiry: (1) considering the testimony elicited at the hearing, did the police officers have reasonable grounds to stop the defendant? and (2) assuming the defendant's detention was lawful, did the officers' search exceed its proper scope?

## I.

■■ To justify a "stop" a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" (392 U.S. at 21).[2] In evaluating the reasonableness of the "stop" the Court in *Terry* declared that the facts must be judged against an objective standard, to wit:

"[W]ould the facts available to the officer at the moment of the seizure * * * 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 22, 20 L.Ed.2d at 906.

Considering the facts presented, the Court there concluded that the officer lawfully stopped petitioner Terry and his comrades. Clearly, after the officer had observed the men walk alternately along the same route, pausing to peer into the same window front nearly 24 times, and confer frequently with each other, the officer had reasonable grounds to believe that foul play was afoot.

This court has relied on the holding in *Terry* in numerous recent decisions. In *People v. Clay* (1971), 133 Ill.App.2d 344, 273 N.E.2d 254, the police officers were notified of a street fight at 4400 N. Sheridan Road. They proceeded to the scene, parked their car, noticed defendant and another man standing on the opposite side of the street, alighted from their car and, as they approached the defendant, he began to run away. The officers gave chase and yelled "Stop, Police officer." but the defendant continued running and threw a gun to the ground as he did so. Defendant was indicted for the offense of unlawful use of weapons and the trial court subsequently sustained his motion to suppress. In the appeal taken by the State this court reversed and remanded the cause relying on *Terry* as it noted, *inter alia,* that:

"A police officer may in *appropriate circumstances* and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." (Emphasis supplied.) 133 Ill.App.2d at 346.

In *People v. Staples* (1971), 1 Ill.App.3d 922, 275 N.E.2d 259, the police officers were investigating a series of hotel robberies which had

---

[2] This requirement of specificity, the *Terry* Court noted, "is the central teaching of this Court's Fourth Amendment jurisprudence" 392 U.S. at 21 n.18, 20 L.Ed.2d at 906 n.18.

occurred in the vicinity of the Chicago Stadium. They stopped the defendant in that area at 3:05 A.M. when they noticed that he fit the general description of the suspect. As they spoke to the defendant he appeared "fidgety" which prompted the officers to pat him down but, as one of them touched defendant, he bolted off. As defendant ran he threw a gun to the ground, stopped, and was taken into custody. This court there found that "the police officers, in stopping and questioning the defendant were properly executing their duties pursuant to *Terry v. Ohio*" (1 Ill.App.3d at 925).

The officers in *People v. Keith* (1972), 7 Ill.App.3d 1071, 289 N.E.2d 103, proceeded to the address of a reported burglary in progress and observed a single auto in front of the building with five men in and around the car. The men saw the officers and all but one entered the car before it pulled away. The officers recognized the fifth man as one who had been stopped before, picked him up, proceeded to stop the car, and noticed a television in the rear seat. Having taken the keys from the ignition the officers opened the trunk and found another television. When none of the men would claim ownership of the sets they were placed under arrest. The trial court suppressed the physical evidence and this court reversed its decision finding that, under *Terry,* the officers were "well within their authority to stop the vehicle pursuant to their investigation of the reported crime" (7 Ill.App.3d at 1074).

The facts of the instant case readily distinguish it from all of the cases cited above. In *Terry* the officer had observed the conduct of petitioner and his companions for a prolonged period of time before stopping them and making inquiries. In each of the cases decided by this court the defendant had been stopped at or very near the scene of suspected criminal activity shortly after the officers had received a radio report directing them to investigate. In *Staples* the officers had been investigating a series of hotel robberies for six days before coming upon the defendant, they stopped him in the immediate vicinity of the crimes as he walked alone on a deserted street in the early morning hours. In *Keith* the officers were responding to a burglary in process message.

In the case at bar the officers stopped the defendant nearly three hours after having heard a report of the latest cleaning store robbery as they observed him walking down a crowded street approximately two and one half miles from the location of the crime. To justify the stop, Officer Gibson stated that he noticed the defendant not only fit the general description of the robber, but also happened to be carrying a sweater over his arm as if he were en route to a cleaning establishment.

The record does not reveal the information that formed the basis of the "general description" nor does it reveal which physical character-

istics of defendant Moorhead conformed with the alleged general description thereby making him a prospective defendant. We know only that he somehow fit a general description and that he was carrying a sweater over his arm. These factors, combined with the remote time and place of defendant's seizure, do not comport with the standard of specific information which the Supreme Court has required an officer to have before he may lawfully stop an individual on the street. Emphasizing the importance of this standard in *Terry*, the Court stated:

> "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction." 392 U.S. at 22, 20 L.Ed.2d at 906.

It was just such an "inarticulate hunch" which prompted the officers to approach the defendant and, while we recognize the right of police officers to pursue their investigative duties (*Terry v. Ohio, supra,* at 22; *People v. Keith, supra,* at 1073), we cannot sanction the arbitrary detention of individuals on the street unless the officer has sufficient grounds to reasonably believe that the person stopped was involved in or can offer information concerning the criminal activity under investigation (see *People v. Watson* (1972), 9 Ill.App.3d 397, 292 N.E.2d 457). We hold that under these circumstances the officers were not authorized to stop the defendant pursuant to section 107—14 of the Code of Criminal Procedure.

## II.

■■■ The subsequent search of the defendant, whether it be of the brown paper package in defendant's hand as the officer testified, or the pants pocket as defendant testified, was not constitutionally permissible under section 108—1.01 of the Code of Criminal Procedure and the facts in this record. The arrest based on the discovery of the 10 tinfoil packets containing white powder was constitutionally impermissible under the fourth amendment of the Constitution of the United States and section 6 of article II of the Constitution of Illinois (Ill. Const. (1870), art II, sec. 6). Therefore, the court erred in not granting defendant's motion to suppress the 2.1 grams of heroin.

For these reasons the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

STAMOS and LEIGHTON, JJ., concur.