THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MATTHEW L. PRUITTE, Defendant-Appellant.

Third District   No. 3—83—0710

Opinion filed June 27, 1984.

Robert Agostinelli and Sue Augustus, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial in the circuit court of Will County, defendant, Matthew Pruitte, was found guilty of burglary and sentenced to a term of eight years' imprisonment. On appeal defendant argues that his conviction should be reversed because (1) the trial court's order denying the defendant's motion to suppress evidence was erroneous because there were no reasonable grounds for a *Terry* stop; (2) in any event, the police exceeded the limits of a permissible *Terry* stop and arrested the defendant without probable cause; and (3) the trial court erred in denying the defendant's right to withdraw his waiver of a jury trial by erroneously interpreting the provisions of section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.9).

At the hearing on the motion to suppress evidence the following facts were presented. On March 9, 1983, at 2:45 a.m., Officer Gordon Corp of the Joliet police department stopped the defendant in downtown Joliet. Corp testified that he stopped the defendant because defendant was staggering and since defendant was the only person Corp had seen in the area he was suspicious of him. Defendant identified himself as Matthew Pruitte and told Corp that he was going to a bar. Corp thought the defendant was intoxicated. After running a warrant check which came back clear, he left the defendant and continued on patrol. Two or three minutes later Corp again saw the defendant walking north on Chicago Street at Clinton.

While on patrol, Officer Charles McDonald heard a burglar alarm at the Fitwell Men's Store. He found a broken window on the Chicago Street side and radioed in the report. McDonald secured the area, waited for the store owner and observed no persons in the immediate vicinity. Officer Corp was assisting a disabled motorist when he heard a radio dispatch of the burglary at Fitwell's. Fitwell's is approximately one block away from where Corp had last seen the defendant. Corp relayed a message over the radio, stating that he saw only one person in the downtown area, and described that person as a male, black, in his twenties, wearing a baseball cap backwards, blue jeans and a brown coat. He also gave the individual's name as Matthew Pruitte.

Officer James Ryan heard the burglary report and drove to Fitwell's, where he saw the broken window. He heard Officer Corp's broadcast of the description of the defendant and he began circling

the area near Fitwell's, gradually increasing the radius of his circle. At approximately 3:40 a.m., Ryan found defendant walking at a normal pace northbound on Collins Street near Columbia. Defendant was carrying a bag under his right arm. Ryan drove past the defendant, turned around, and pulled the squad car on the sidewalk in front of the defendant.

Officer Ryan testified that he got out of the squad car, called the defendant by name and asked him if he had a gun in the bag. Ryan did not notice any writing on the plain brown bag, nor could he tell what was in it. He testified that the defendant answered "No" and consented to allow Officer Ryan to look in the bag. Ryan found three pair of tagged jeans in the bag and contacted an officer at the scene of the burglary over the radio and determined that the jeans found in the bag were the same name brands as the jeans which were taken from Fitwell's. He then placed defendant under arrest for burglary.

The defendant testified that as he was walking home that morning on Liberty Street, he heard someone call his name. He walked to the back of a vacant building and saw a man he did not recognize. The man asked the defendant if he remembered meeting him a previous night in back of a tavern while he was with defendant's cousin. Defendant still did not remember him or his name. The man then pulled out a brown paper bag and asked defendant if he wanted to buy some blue jeans. Defendant offered to buy three pair for $25. He put the jeans in the bag, paid the man and continued walking home.

Defendant further testified the police pulled him over on Collins Street and looked in the bag; he did not give the police officer permission to look in the bag; he did not try to run because he had not done anything wrong; he did not break into the store; the closest he came to the store was two blocks; and he had been drinking beer earlier in the evening. The trial court denied the defendant's motion to suppress evidence, and after a bench trial defendant was found guilty of burglary.

The defendant first argues that there were no reasonable grounds for a *Terry* stop and that, even if there were, the police exceeded the limits of a permissible *Terry* stop and arrested the defendant without probable cause. The People argue that the stop was an investigative encounter and not a *Terry* stop; that, assuming, *arguendo*, a *Terry* stop did occur, it was properly based upon sufficient articulable facts; and that the arrest did not take place when the police officer stopped his squad car on the sidewalk in front of the defendant.

A police officer may stop an individual and conduct a limited

search for weapons even though the officer lacked probable cause to arrest, provided that prior to the stop he had reasonable grounds to suspect the individual was engaging in, or was about to engage in, criminal activity, and the officer has reason to believe the individual was armed and dangerous. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

This holding has been codified in sections 107—14 and 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, pars. 107—14, 108—1.01; see *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537.) Section 107—14 provides in pertinent part: "A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***." Section 108—1.01 states in brief that "[w]hen a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. ***"

The People contend that the stop of the defendant was merely an investigatory encounter and not a *Terry* stop. The People cite several cases as authority for this contention; however, each case presents factually opposite situations and is not dispositive in the present case. In *People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252, a police officer followed the occupants of a pickup truck for one quarter of a mile. He neither activated his squad car's Mars lights, sounded the siren, nor signaled the truck to stop in any manner. The driver of the pickup truck voluntarily pulled over to the side of the road. The court held that no illegal stop occurred which would warrant suppression of evidence. The stop was ruled merely an investigatory encounter.

*Long* is distinguishable from the present case. Officer Ryan testified that he drove past the defendant, turned his squad car around and drove it on the sidewalk, stopping several feet in front of the defendant. The defendant did not voluntarily stop to talk to the police officer as did the defendant in *Long*. In fact, the defendant had no choice in the matter, for as Officer Ryan testified, the defendant "had to stop." The People's reliance on *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319, and *People v. Brett* (1984), 122 Ill. App. 3d 191, 460 N.E.2d 876, is also misplaced. Under the circumstances of the present case, Officer Ryan's stop of the defendant was not merely an investigatory encounter. The issue now becomes whether the stop was properly based upon specific and articulable facts which, when taken together with rational inferences from those

facts, reasonably warranted the intrusion under *Terry.*

The defendant argues that there were no reasonable grounds for a *Terry* stop of the defendant by Officer Ryan and cites as authority *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 308 N.E.2d 381. We agree with the People that *Moorhead* is distinguishable from the facts in the present case. In *Moorhead,* the police stopped the defendant approximately three hours after receiving a report of a cleaning store robbery. Defendant was walking down the street about 2½ miles from the location of the robbery. The police stopped the defendant because he matched the general description of the robbery suspect and because he was carrying a sweater over his arm in such a manner that the police officer was led to believe he was going to a cleaning store. (17 Ill. App. 3d 521, 523, 308 N.E.2d 381, 383.) The court held that the information possessed by the officers did not comport to the *Terry* standing and the seizure was too remote as to time and place. The police stopped the defendant based solely on an "inarticulate hunch" and, therefore, the defendant's seizure was unjustified. 17 Ill. App. 3d 521, 527-28, 308 N.E.2d 381, 386.

In the present case, there was no such "inarticulate hunch" by Officer Ryan. He did possess information which does comport with the *Terry* standard. Ryan did not possess a general description of the defendant. He had an exact description as well as the name of the individual sought. The stop of the defendant was also not remote as to time and place. Defendant was stopped within 13 blocks of the store and within half an hour from the time of the burglary. Defendant was also observed within one block of the store only minutes before the burglary without a bag or other package. The defendant in *Moorhead* was stopped while walking down a street in Chicago at 4 p.m., while the defendant in the present case was stopped at 3:40 a.m. Testimony by the police officers establish that the defendant was the only person they observed within the period of time between 2:45 a.m. and 3:40 a.m. For these reasons, we believe *Moorhead* is not persuasive.

The court in *Terry*, in evaluating the reasonableness of a stop, held that the facts must be judged by an objective standard and stated "would the facts available to the officer at the moment of the seizure *** 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.

Considering the facts presented in the present case, we agree with the trial court that it was reasonable for Officer Ryan to make a *Terry* stop of the defendant. Under these circumstances, Officer Ryan's stop of the defendant was reasonable and based upon specific

and articulable facts. We therefore affirm the trial court's holding that the stop was proper under *Terry*.

■ We do not agree with the defendant's argument that Officer Ryan exceeded the bounds of a permissible *Terry* stop and arrested the defendant without probable cause. Officer Ryan testified that when he got out of his squad car he called the defendant by name and upon observing that defendant was now carrying a bag which he did not have before, Ryan asked the defendant if there was a gun in it and if he could have permission to look in the bag. From this evidence the trial court could have found that the defendant consented to the search. For this reason, the blue jeans found in the bag were not fruit of an illegal arrest.

Finally, the defendant argues that the trial court denied him his right to a jury trial by erroneously interpreting the provisions of section 9 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.9). Prior to trial, and after meeting with a court liaison for TASC, the defendant filed a petition to elect treatment as an addict pursuant to section 8 of the Act. The defendant testified that after this meeting with the liaison he was under the impression that he was qualified for treatment. Defendant was also told by another inmate that he was eligible for treatment, which added to this belief.

The trial court admonished the defendant, pursuant to section 9, that by filing the petition to elect treatment the defendant would have to waive his right to a speedy trial and his right to a jury trial. Subsequent to this hearing, it was determined that the defendant was ineligible for treatment because it could not be verified that he was an addict. The defendant then moved to withdraw the petition and requested a jury trial, which were denied by the trial court.

Section 9 states in pertinent part: "If *** the individual states that he is an addict and the court finds that he is eligible to make the election ***, the court shall advise him that *** the prosecution of the charge may be continued or that the entry of any judgment of conviction *** shall be deferred if he elects to submit to treatment and is accepted for treatment ***." The section also states: "The court shall further advise him that (a) if he elects to submit to treatment and is accepted, he may be placed under the supervision of a licensed program ***; (e) to make such an election, he must waive a jury trial and consent to a trial by the court ***." Ill. Rev. Stat. 1981, ch. 91½, par. 120.9.

The intent of the legislature is ascertained primarily from a consideration of the language of a statute. If the intent can be ascertained from the language itself, such intent must prevail, and will be

given effect without resorting to other aids for construction. (*People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666.) Courts do not favor any construction of a statute that would raise legitimate doubts as to its constitutionality. *People v. Scheib* (1979), 76 Ill. 2d 244, 390 N.E.2d 872.

■ We find that the language in the first sentence of the section and the language in (a) of the second sentence, *i.e.*, "and is accepted," should also be read into the admonishment of a jury trial waiver in (e) of the second sentence. In other words, an individual waives his right to a jury trial only when he elects to submit to treatment and is accepted. The court is unaware of any legislative intent to deny anyone his constitutional right to a jury trial upon the mere assertion of being an addict and in electing treatment for his addiction. It is more likely that the intent of the legislature was to have the individual waive his right to a jury trial after his acceptance into a treatment program. Our holding does not, however, preclude a trial judge from admonishing the individual before that individual is accepted for treatment to the effect that once accepted he waives his right to a jury trial.

The People argue that our holding in *People v. Richardson* (1983), 118 Ill. App. 3d 175, 454 N.E.2d 742, is persuasive in the present case. *Richardson*, however, dealt with a different issue and a different section of the Act which, contrary to the People's assertion that the language of the two sections is identical, does not provide for a waiver of the constitutional right to a jury trial. In fact, in *Richardson* no rights of any kind were waived by the defendant when his alleged addiction was brought to the attention of the court.

■ The right to a jury trial is a constitutional right of highest importance. Its waiver for insubstantial reasons has never been approved. The People have not shown any reason why the waiver of a jury trial should be triggered merely by the filing of a petition, rather than on defendant's embarking on a treatment program. Consequently, the waiver as interpreted by the trial court has no relation to any purpose sought to be accomplished by the Act.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and remanded with directions the defendant be granted a new trial.

Reversed and remanded.

SCOTT and HEIPLE, JJ., concur.