**People of the State of Illinois, Plaintiff-Appellee, v. Raymond Jackson, Defendant-Appellant.**

**Gen. No. 51,751.**

First District, Second Division.

July 16, 1968.

Rehearing denied September 9, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty and Marshall J. Hartman, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. Rosen, Assistant State's Attorneys, and Professor James R. Thompson, Northwestern University School of Law, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Defendant, Raymond Jackson, was convicted in a bench trial for the offense of unlawful possession of a narcotic drug and sentenced by the court to a term of from not less than three (3) nor more than ten (10) years in the State Penitentiary. He appeals from that conviction asserting as his theory: (1) that the State failed to demonstrate sufficient probable cause to justify defendant's arrest without a warrant, and (2) that the trial court erred by denying defendant's motion to suppress People's Exhibit No. 1 (package containing heroin), seized as a consequence of that unlawful arrest.

The facts of the case for the purpose of the questions advanced on appeal are relatively undisputed. The arresting officer, Henry Pates, testified that at approximately 4:00 p. m. on March 4, 1966, he had received certain information pertaining to defendant from a "special employee" whose identity was not disclosed. Police Officer Clifton Martin corroborated the fact that Pates had been so contacted. The scene of their conversation was in the vicinity of Moore and Division Streets in the City of Chicago in close proximity to the area where defendant was later arrested. Pates testified in explicit terms that he had known and dealt with this informer in the past and regarded him to be reliable. The officer explained that he had had eight or more similar past experiences with the same informer and that the information volunteered had culminated in arrests and criminal convictions. Pates named a particular case in which a conviction had been obtained following an arrest prompted by the informer's tip.

At this juncture in the State's case, however, an anomalous situation presented itself. As a timesaving factor and to avoid a separate pretrial hearing, counsel for defendant had reserved his motion to suppress People's Exhibit No. 1, (the small brown package containing heroin) for presentation during the actual trial of the cause. Thereafter, counsel lodged successful hearsay objections to the various attempts by the prosecution to have Officer Pates testify as to the substance of his conversation with the "special employee." The officer was permitted to continue, being limited in his testimony however only as to the manner in which he subsequently conducted himself based upon the information furnished. This procedure, in turn, created a void in the evidence of which defendant now complains. He, in fact, concedes on review that his objections below were erroneously sus-

tained, citing the case of People v. Beattie, 31 Ill2d 257, 201 NE2d 396 (1964).

It appears that Pates and Martin, in the company of two other policemen, proceeded immediately after the conversation, by automobile, to the vicinity of 1300 North Sedgwick Street where they observed defendant, in open view, from a distance of 10 to 12 feet, walking alone toward the south on the sidewalk. The time was 4:15 p. m. the same afternoon. Pates stated in this regard that he had known of his suspect's identity and was able to recognize him on sight because of his communication with the informer and previous personal contact with defendant during a narcotics investigation a month earlier.

The police vehicle pulled to the side upon spotting defendant. Separated by a string of parked cars, Pates emerged and called out to defendant by his known nickname, "Goo Goo." Martin simultaneously disembarking from the car exclaimed to defendant, "Police Officers, you are under arrest." Thereupon, defendant hesitated momentarily, dropped or threw a small brown package to the sidewalk (which the officers had not theretofore detected as being in his possession), turned about and ran north into a nearby tavern at 1307 North Sedgwick. It was at this point that defendant was overtaken and placed in custody by Officer Pates for unlawful possession of narcotics; i. e., heroin (which Pates stated he expected to find).

Assisting in the pursuit of defendant, Martin stopped to retrieve the discarded package, then continued to the tavern to help restrain the suspect. His subsequent field test at the scene yielded positive indications of a narcotic. The package was later turned over to the Police Crime Laboratory for examination, the defendant stipulating in the lower court that the chemical analysis proved the contents to be that of heroin. The package and its con-

tents (People's Exhibit No. 1) were thereinafter admitted into evidence over defendant's previously noted motion to suppress.

The errors assigned by defendant to the lower court proceedings are respectively contingent upon the existence or lack of probable cause for his arrest. Statutory authorization is provided in this regard by our Code of Criminal Procedure which states in succinct terms:

> "A peace officer may arrest a person when: . . . (c) He has reasonable grounds to believe that the person is committing or has committed an offense." (Ill Rev Stats (1965), c 38, par 107–2.)

This same element of probable cause is one of constitutional dimension which must be adequately demonstrated from the attending circumstances of the case as reasonably existing in the mind of the arresting officer at the moment his arrest of the accused is effectuated. Beck v. Ohio, 379 US 89 (1964). Having carefully considered the record of the instant case, we think the factual circumstance capably sustains the finding of the lower court upholding the validity of defendant's arrest and admitting into evidence the narcotics observed to have been in his possession.

We do not understand defendant, by his theories on appeal, to challenge the past reliability of the informer. Rather, he endeavors to refute any justification for the trial court's finding of probable cause where, as here, the record is silent as to the substance of the information acted upon by the arresting officers and hence remains devoid of a basis upon which to formulate a judgment in that regard.

It is first apparent that this portion of the State's evidence was erroneously omitted by the trial court as a consequence of defendant's own objections for which he now complains. People v. McCray, 33 Ill2d 66, 210 NE2d 161 (1965), affd, 386 US 300 (1967); People v. Beattie,

31 Ill2d 257, 201 NE2d 396 (1964). This, in itself, raises a serious doubt as to the propriety of the theory he now brings on appeal. Defendant's entire line of argument directed at the absence of testimony to evidence the grounds for a reasonable belief is furthermore, in the final analysis, extraneous to the decisive issue in the case. Contrary to the premise upon which that contention is advanced, the testimony available to the court to establish the existence of probable cause for his arrest was not necessarily confined to the factual circumstances preceding the initial streetside encounter. It thus appears to our satisfaction that that which does present itself when linked with defendant's inculpatory conduct upon being verbally confronted sufficed to provide a legitimate basis upon which to found a finding of probable cause independent of the information allegedly supplied by the "special employee." Defendant purports to signify the fallacy of this reasoning by reference to the exclusionary rule and cases in support thereof. It is his position that evidence of his behavior after being confronted by the police cannot operate to provide either the basis of probable cause or substantive evidence of guilt, inasmuch as that conduct was the direct and involuntary product of the unwarranted arrest in the first instance. Representative of that proposition and the cases upon which defendant relies is the case of People v. Roebuck, 25 Ill2d 108, 183 NE2d 166 (1962) involving in all but one most important aspect, a closely similar factual situation. In Roebuck however, only after the accused had been unlawfully arrested on an ordinance violation by means of an actual or physical restraint did he thrust aside a package containing heroin which was seized by the arresting officers and became the object of his motion to suppress.

■ Unlike this and his other authorities, defendant's eventual apprehension in the tavern cannot be said to have been the immediate or direct consequence of an arrest and/or search otherwise unlawful in its incipiency.

Corroborative testimony offered by the State vividly portrayed that defendant took flight, disposing of the parcel in route after being advised from a distance of 10 to 12 feet that he was under arrest. As was stated in People v. Roebuck, supra, the question of the lawfulness of the arrest is to be determined on the basis of the justification for the arrest at the time it was made, and any subsequent yielded incriminating evidence cannot be permitted to relate back to operate as justification for that arrest.

The question then essentially becomes whether the officers' pronouncement of an intention to arrest, as presumably understood by defendant, was sufficient to effectuate his arrest within the meaning of the principles enumerated in Roebuck. An arrest, in the sense we are concerned with here, requires a purpose or intention to effect an arrest under a real or pretended authority, an actual or constructive seizure or detention of the person to be arrested by one having the present power to control him, a communication by the arresting officer of his intention to arrest, and an understanding by the person to be arrested that such is the intention of the arresting officer. See 4 Words and Phrases, Arrest, p 234 et seq., 5 Am Jur2d, Arrest, § 1. For our limited purposes in the case at bar, we need only be concerned with the dispute over the restraint or seizure of the person of defendant.

In People v. Mirbelle, 276 Ill App 533 (1934), an almost identical situation was resolved. There, two police officers observed defendant from a distance in the vicinity of a recent suspected holdup. With drawn guns, one officer shouted, "Stick them up, we are police officers, stick them up." Responding, defendant raised his arms above his head enabling the police to observe his possession of a revolver protruding from beneath his waistline. Defendant was convicted for carrying a concealed weapon and appealed raising the contention that the evidence of

his possession of the gun was produced as an incident of an unlawful arrest. The Mirbelle court, while noting that an actual physical touching of the person was not essential to constitute an arrest, stated:

> "The custody or control, the assumption of which is involved in an arrest, imports actual restraint or detention, the mere utterance of words indicative of an arrest being insufficient, except perhaps when followed by submission."

The rule of Mirbelle, we might add, is substantially reflected by our present statutes on the subject whereby a requirement of some physical restraint or custody is included; i. e.,

> " 'Arrest' means the taking of a person into custody." (Ill Rev Stats (1965) c 38, par 102–5.)

> "An arrest is made by an actual restraint of the person or by his submission to custody." (Ill Rev Stats (1965) c 38, par 107–5(a).)

Here, when Officer Martin proclaimed the intentions of the police to make an arrest of defendant, the principals were partially separated by a string of parked cars and at a distance of 10 to 12 feet from one another. Defendant was then at liberty on an unenclosed public sidewalk, and by his flight foreclosed upon any notion that he may have covertly submitted to the authority of the police. It appears that mere naked words of intention were communicated and no effective restraint concomitant with the proclamation, even in a constructive manner, was achieved until the eventual confrontation removed in both points of time and place from the initial encounter. Nowhere does it appear that the police had brandished weapons.

By his resisting efforts, defendant had thus remained free from the power of control intended to be exercised by the authorities, without which element he cannot be

heard to submit that his arrest had been made. United States v. Washington, 249 F Supp 40 (DCDC, 1965); Smith v. State, 153 Tex Crim 230, 219 SW2d 454 (1949). Accordingly, as it pertains to the court's finding of probable cause, these evidentiary considerations of flight and disposition of the small parcel were not produced by an arrest, and hence properly apply themselves at the moment of actual arrest in the tavern, together with all that had preceded to show the knowledge possessed by Officer Pates, as sufficient to support a reasonable belief that defendant was committing or had committed an offense.

Defendant cites People v. Pruitt, 79 Ill App2d 209, 223 NE2d 537 (1967), arguing that Officer Martin's exclamatory remark sufficed to impose that element of restraint needed to effect his arrest. We, however, do not interpret Pruitt to stand for that proposition. The question is essentially one to be resolved on an ad hoc basis. In Pruitt, unlike the instant case, two police investigators confronted the defendants face to face at close quarters within the physical confines of a church anteroom. The defendants were informed that they were suspected of the recent theft in the church and were requested to accompany the police to headquarters. Significantly, only after the defendants had submitted to the authority and control of the police without a show of outward resistance did the assailed search of their persons transpire. Such is not the instance now before us.

Defendant submits that by the decisions in Wong Sun v. United States, 371 US 471 (1963) and Commonwealth of Massachusetts v. Painten, 368 F2d 142 (1st Cir, 1966), any inculpatory conduct provoked by police action in itself unsupported by probable cause must be excluded in determining the lawfulness of the arrest. In Wong Sun, narcotics agents acted on information supplied by a person under arrest who was not an informer of known

reliability. The tip openly invited the officers to comb 30 city blocks in search of one "Blackie" Toy. By happenstance, the agents entered a laundry which bore the uninformative sign "Oye's." There was otherwise no intimation of record nor information disclosed from any source whereby the agents would have had reason to associate "Blackie" Toy with James Wah Toy, the proprietor, who fled upon being informed of the agents' identity.

In Painten, the defendant discarded a bag containing two guns when a police officer announced his presence at his apartment door. There, however, while the police thought defendant to be a suspicious character, they otherwise had no reason to connect him to the armed robbery under investigation. Here, the record discloses that Officer Pates knew and considered the informer to be reliable. Pates knew defendant on sight, proceeding immediately to a delimited and neighboring street on the basis of a conversation involving defendant expecting to find him in possession of heroin. For the purposes of distinguishing Wong Sun and Painten, we cannot say that this action was contrived by a vague suspicion.

As his behavior related to substantive evidence of guilt, defendant next contends that the police seizure of People's Exhibit No. 1 cannot be properly divorced from the legitimacy of his arrest simply because that arrest, in its technical sense, may have followed his disposition of the package containing heroin. Again, defendant's authorities are inappropriately taken as there had been no actual arrest, hence no search incidental to an arrest from which an illegal invasion might be inferred.

Unlike the cases he cites, defendant voluntarily thrust aside and abandoned the package in the plain and open view of the officers under the suspicious circumstances of flight to avoid arrest. There had as of this moment, not been any opportunity by the officers to physically confront, investigate and search defendant. The parcel

thrown aside came to rest upon the public sidewalk again within the full view of the police. It is thus apparent from the facts that no search by a prying into or invasion of the privacy of defendant's person or property became necessary to effect a seizure of the narcotics and thereby raise issue as to the reasonableness of that conduct. People v. Davis, 33 Ill2d 134, 210 NE2d 530 (1965); People v. McCracken, 30 Ill2d 425, 197 NE2d 35 (1964). Accordingly, it is our opinion that defendant's arrest was independently supported by probable cause, and that the court below properly denied his motion to suppress People's Exhibit No. 1.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and McNAMARA, J., concur.