THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JERRY CLAY, a/k/a HIMMIE CLEGGETTE, a/k/a JAMES FOSTER, Defendant-Appellee.

(No. 55329;

First District—June 14, 1971.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Joseph H. Romano, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

This is an appeal by the State from an order suppressing evidence.

Defendant was indicted for unlawful use of weapons [Ill. Rev. Stat. (1969) ch. 38, par. 24—1 (a) (4)] and, subsequent to his arraignment, moved to suppress the evidence. A hearing on defendant's motion to suppress was conducted and the motion was sustained.

Only one witness, Officer David N. Sandlund, testified at the hearing. According to Officer Sandlund, he and his partner were patrolling near 4400 North Sheridan Road, Chicago, on May 22, 1970, when they were notified of a fight in the street at that location. The officers, both of whom were in full uniform, proceeded to the scene of the alleged fight and stopped their squad car. Officer Sandlund saw the defendant and another fellow standing "on the west side of Sheridan Road, about 4410." As Officer Sandlund alighted from the squad car and started to walk toward the defendant, the defendant began to run away. The officer gave chase and yelled: "Stop. Police Officer." The defendant kept running; and, as stated by Officer Sandlund:

> As we were running he went west on Montrose for a short distance and then north on Broadway. As he made the corner there, he threw the gun [.32 cal. Mauser] between a waste paper basket and a news stand on the corner and still kept on running. I chased him further [and caught him] * * * We went back

to where I saw the gun drop and picked that up and then went back to the squad car  *  *  *

The officer also indicated that he saw the defendant remove the gun from the right hand pocket of his jacket immediately before he tossed the gun away. Officer Sandlund was only about six or seven feet behind the defendant when the gun was dropped. The gun itself contained five live bullets and was capable of firing when recovered by the officer.

The court sustained defendant's motion to suppress the gun as physical evidence because there was no proof of an actual fight at 4400 North Sheridan Road, because there was no evidence that the private citizen who notified the police about the alleged fight was a reliable source and because the defendant's act of running away from the police did not constitute a crime. It appears, therefore, that the court did not believe that Officer Sandlund had probable cause to make an arrest when he arrived at the scene of the alleged fight. This being so, the court apparently reasoned that the gun had been improperly seized by the police as incident to an unlawful arrest and thus the court sustained defendant's motion to suppress the gun.

We agree that no probable cause existed for defendant's arrest when the police arrived at the scene of the alleged fight. We find no indication, however, that the police intended to arrest the defendant when they stopped their squad car near the place where defendant was standing. Having received information concerning a disorder in progress at 4400 North Sheridan Road, Chicago, the police responded as they were duty bound to do. When they arrived at the scene and saw two men standing nearby they naturally sought to conduct at least a cursory investigation or inquiry into the alleged disorder. There is no indication that the officers believed the two men, one of whom was the defendant, to be anything more than potential sources of information about the alleged disorder. The officers in no way attempted to communicate with defendant as they alighted from their vehicle and walked toward him. It is, therefore, patently clear that no arrest was either attempted or effected at this point in the developing circumstances of the situation.

■■ Suddenly however, the defendant began to run from the approaching police. While such conduct was not criminal, as the trial court indicated, it was certainly unusual. From the viewpoint of the approaching police officers, the conduct of defendant was at least reasonably suspicious under the circumstances and obligated the officers to inquire into the reasons for defendant's sudden flight. A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. (*Terry v. Ohio* (1968), 392 U.S.

1, 22; see also *People v. Bridges* (1970), 123 Ill.App.2d 58, 259 N.E.2d 626.) Officer Sandlund chased the defendant and shouted: "Stop. Police Officer." The word "stop" is not necessarily to be construed in every instance as a communication of an intention to arrest, *People v. Bridges* (1970), 123 Ill.App.2d 58, 64, 259 N.E.2d 626, and we do not believe that the particular circumstances of this case suggest that Officer Sandlund, by shouting at the defendant, was attempting to arrest him. Indeed, we agree with the trial court that certainly no probable cause existed for defendant's arrest at this point, but we emphasize that no arrest was attempted. See *People v. Jackson* (1968), 98 Ill.App.2d 238, 244, 240 N.E.2d 421 wherein the court identifies the requirements of an arrest.

■■ As Officer Sandlund came within six or seven feet of the fleeing defendant, he saw defendant reach into his pocket, remove a hand gun and toss it away. At this point, there can be no doubt that the officer had probable cause to effect an arrest. Ill. Rev. Stat. (1969), ch. 38, par. 24—1 (a) (4), specifically prohibits a person from knowingly carrying "concealed on or about his person except when on his land or in his abode or fixed place of business any pistol, revolver or other firearm." Thus, when Officer Sandlund finally caught the defendant, he properly placed him under arrest for unlawful use of weapons. Defendant was not arrested until after the offense was committed and witnessed by Officer Sandlund. The trial court's view of this matter as one in the nature of a search and seizure incident to an unlawful arrest was therefore, erroneous. The question, to be sure, was a close one but one which we believe should have been resolved in favor of the State.

For the reasons we have indicated, the order of the trial court is reversed and the cause is remanded with directions to reinstate the indictment and for further proceedings not inconsistent with this opinion.

Order reversed and cause remanded with directions.

BURKE, P. J., and GOLDBERG, J., concur.