THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROOSEVELT STAPLES, Defendant-Appellant.

(No. 54653;

First District—September 15, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Kevin Gallagher, Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terrence J. Mahoney, Assistant State's Attorneys, of counsel) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Defendant, Roosevelt Staples, was charged with the crime of armed robbery. After a bench trial, he was found guilty and sentenced to serve from two to six years in the penitentiary. Defendant Staples appeals his conviction and presents the following issues for our review: (1) Whether he was proven guilty beyond a reasonable doubt; (2) Whether defendant's initial confrontation with the police constituted a valid "stop and frisk" or an invalid arrest remote in time and place from the crime; and (3) Whether the absence of counsel at defendant's pre-indictment lineup denied defendant his constitutional rights under the sixth amendment to the constitution of the United States. We shall set out a brief statement of the facts which disposes of defendant's reasonable doubt contention and then shall consider defendant's latter two contentions.

The complaining witness, Mrs. Shirley Finley, was employed as a hotel clerk at the Crest Hotel, 1519 W. Adams, Chicago, Illinois, in the early morning hours of January 29, 1968. Mrs. Finley was alone at the time. Between 2:30 and 3:00 A.M., two young men entered the hotel through the front door. One of the men approached the window of the clerk's cage where Mrs. Finley was working and asked her to make change for a quarter. At this time, the second young man, whom Mrs. Finley identified in court as the defendant, Roosevelt Staples, appeared from behind a wooden partition which enclosed the cage. The defendant confronted Mrs. Finley with a gun in his hand and demanded the money located in the cash drawer. Mrs. Finley removed $18.00 to $20.00 from the money drawer and placed it on the counter. The two men picked up the money

from the counter and fled the premises. Mrs. Finley testified that "the lighting in the lobby was clear at that time in the morning. We have a big light right up in the center and I have two lights on each side of my cage. There is also one along the wall by the vendor box, the candy machine and the cigarette machine and the pop machine. These lights were burning then."

We find that the testimony related by Mrs. Finley was positive and credible. Mrs. Finley informed the court as to the adequate lighting fixtures facilitating her clear observation of the defendant. She observed the defendant when he requested the cash at a time when he was no more than a few feet directly in front of her. Mrs. Finley subsequently identified the defendant from a police lineup approximately one week after the robbery.

■■ The defense seeks to make much of (1) the fact that Mrs. Finley originally told the police that the gun was silver while at trial she identified the gun as black with a pearl handle and (2) the fact that Mrs. Finley could only remember the defendant's coat was dark, but could not remember its specific color. We believe that the alleged inconsistencies related by Mrs. Finley were at most minor discrepancies and in no way affected her credible testimony. The positive identification by Mrs. Finley, who had ample opportunity for observation, is sufficient to support conviction. *People v. Mach* (1962), 25 Ill.2d 416, 185 N.E.2d 154.

■■ Defendant next contends that the arrest of the defendant was unlawful and as a result the gun obtained incidental to the arrest should have been suppressed. At trial, Officer George Kush, one of the arresting officers, testified that on February 5, 1968, his commanding officer informed him of several hotel robberies perpetrated in the vicinity of the Chicago Stadium. Officer Kush was given a general description of the suspect. At approximately 3:05 A.M., on February 5, 1968, Kush was driving eastbound in the vicinity of the Chicago Stadium when he observed a man walking on the street who fit the description of one of the perpetrators of the hotel robberies. Officer Kush described the confrontation as follows:

"A. We stopped the vehicle and got out and I announced my office and showed my star.

Q. What occurred then?

A. The defendant was rather fidgety and reached around his—

MRS. WILIAMS: Objection to this.

THE COURT: Oh, he may testify to that, objection overruled.

Q. Continue.

A. Was moving his hands around, so we instituted a search of his person. And as Officer LaPierre touched his back the defendant bolted

and ran in a southeasterly direction through the projects   *   *   *

    Q. What, if anything did you do?

    A. I got behind the wheel of the squad car and drove it east to an entranceway in the projects, and then drove south.

    Q. And what did you do then?

    A. I got out of the car and the defendant was running in my direction, and I started to go in that direction, and he stopped and started to turn back. At this point I observed him throw a gun on the ground, and then he put his hands in the air and stopped."

At this time the defendant was taken into custody.

    Defendant contends that his initial arrest was unlawful because the police officers lacked probable cause to arrest him. Defendant concedes that his running after the initial arrest gave rise to probable cause, but urges that what takes place after an arrest cannot be used to enhance probable cause before an arrest. The State contends that the initial confrontation between the police officers and defendant Staples was a "stop and frisk" and not an arrest and search. The State argues that defendant was lawfully "stopped for questioning" by the officers pursuant to *Terry v. Ohio* (1968), 392 U.S. 1 and *People v. Lee* (1971), 48 Ill.2d 272, and lawfully "frisked or patted down."

    We believe that the police officers, in stopping and questioning the defendant were properly executing their duties pursuant to *Terry v. Ohio, supra,* within the statutory scope of Ill. Rev. Stat. 1969, ch. 38, par. 107—14 which states: "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person   *   *   *   has committed an offense   *   *   *   and may demand the name and address of the person and an explanation of his actions." See *People v. Lee, supra,* at page 278. Because defendant Staples appeared extremely nervous and "seemed to be reaching for his pocket, or moving his hand around his coat", the police officers acted lawfully in "touch[ing] defendant to pat him down." This frisk or pat down procedure, propounded in *Terry v. Ohio, supra,* has been given explicit statutory expression in Ill. Rev. Stat. 1969, ch. 38, par. 108—1.01, which states:

> "When a peace officer has stopped a person for temporary questioning pursuant to Sec. 107-14 of this code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons."

    In view of defendant's suspect reactions after being stopped the officers had the authority to conduct a limited "pat down" of defendant's person to protect themselves from physical harm. *Terry v. Ohio, supra.*

Defendant's flight subsequent to the initial "stop and frisk" constituted the requisite probable cause for the execution of a valid arrest. For these reasons we find that the police officers lawfully stopped the defendant, lawfully patted him down, and after he attempted to flee and abandon his revolver, had sufficient probable cause to arrest him. The trial court acted correctly in denying defendant's motion to suppress the revolver obtained incidental to the arrest in question.

■■■ Defendant finally contends that the absence of counsel at his pre-indictment lineup denied him his constitutional rights under the sixth amendment. Counsel for the appellant, in their brief, inform this court that they "are not unmindful of the Illinois Supreme Court's holding in *People v. Palmen* (1969), 41 Ill.2d 571, 244 N.E.2d 173, limiting *Wade*, etc., to post-indictment line-ups." They "urge a re-examination of that limitation in light of other recent decisions and a rejection of it." Defendant in effect asks us to overrule *People v. Palmer* (1969), *supra*, *People v. Cesarz*, 44 Ill.2d 180, 255 N.E.2d 1; *People v. Johnson* (1970), 45 Ill.2d 283, 259 N.E.2d 57, and a host of Appellate Court decisions. This we cannot do. One of our functions is to protect a defendant's constitutional rights as enunciated by the U.S. Supreme Court and the Illinois Supreme Court. The U.S. Supreme Court in *United States v. Wade*, 388 U.S. 218, at page 219, dictates the exclusion of an in-court identification if the defendant was not afforded representation of counsel at a "post-indictment lineup." The Illinois Supreme Court in *People v. Palmer*, *supra*, at page 572 states: "In our opinion, these 'lineup' decisions apply only to *post-indictment* confrontations." This court cannot apply these lineup decisions to a pre-indictment confrontation when the U.S. Supreme Court and Illinois Supreme Court do not do so.

For the reasons given, the judgment of the circuit court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.