The People of the State of Illinois, Plaintiff-Appellee, v. Danny Yocum, Defendant-Appellant.

(No. 73-321;

Third District—December 30, 1974.

STOUDER, J., dissenting.

James G. Keis and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

Henry D. Sintzenich, State's Attorney, of Macomb (William Henderson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Danny Yocum, the defendant, was charged with unlawful possession of less than 10 grams of cannabis. After a bench trial he was found guilty and sentenced by the Circuit Court of McDonough County to 1 year probation. He appeals contending that his arrest and search were unlawful.

One afternoon, Charlie Yocum, the defendant's 20-year-old uncle, was driving the defendant and his friend, David Price, around in his car. Both the defendant and Price were students at Macomb High School. Charlie, who had just been released from the county jail that morning or the day before, suggested that they all go to the jail to talk to the prisoners and to let them hear music from his tape player.

The three drove to the jail and parked in the adjacent parking lot, approximately 25 feet from the jail building. The defendant turned up the tape player and stood on the sidewalk in front of the car. Both Charlie and Price sat on the hood of the car. Charlie turned the tape player down at the defendant's request, and the defendant called to Wayne Campaign, an inmate of the jail. It was May and the jail window was open. The defendant and Wayne had a short conversation. At one point, the defendant stepped on the grass next to the sidewalk on which he stood, Charlie told him to get off, and he immediately did. After about 2 or 3 minutes of conversation with Wayne, the defendant saw

two police officers coming out of the building. He stopped talking and joined his friends on the hood of the car. Neither the defendant nor the other two boys ever got any closer to the jail than about 19 feet.

While inside Sheriff Bliven had heard boys talking out behind the jail. Although he could not recall what they were saying, he did hear someone call "Hey Danny," and did testify that persons were "yelling" at the prisoners. He did not mention hearing any music. Believing that these boys were talking to the prisoners, Bliven went out there with Deputy McClure. When he got outside he saw the defendant, Charlie and Price sitting on the hood of Charlie's car. Bliven grabbed Charlie by the arm and McClure grabbed the other two. As they took the boys into the jail, Bliven said to Charlie, "You was talking to prisoners wasn't you?" Charlie replied that he wasn't and McClure said "Yes you was." Bliven told Charlie that the charge was "disorderly conduct right now."

Bliven thought it was suspicious that Charlie would return to the jail so soon after his release. He did not see the boys do anything but sit on the car, but he wondered why they were there. If he had found hacksaw blades or knife blades on them, he would have charged them accordingly. He specifically stated that he did not have probable cause to believe the boys were planning anything, just suspicions. There were signs posted on the jail wall which said that talking to the prisoners was not allowed. Bliven promulgated this rule because talking through the jail windows creates problems and people often did it. "We just forbid it—it is one of the jail rules we have." This rule is also suggested in the State jail-standards book.

Officer Bliven and McClure brought the youths inside the jail; they questioned and searched them. Charlie was released with a warning not to talk to the prisoners again. McClure told Price that the charge was trespassing and let him go after fingerprinting and searching him. McClure searched the defendant and found a small amount of cannabis. The defendant was booked and put in a cell.

The charge against the defendant of unlawful possession of cannabis was the only charge against any of the three stemming from this incident.

Defense counsel moved to suppress the evidence on the basis that it was a direct consequence of an illegal arrest. The trial judge denied defendant's motion finding that the police had "reasonable grounds to arrest the defendant for such disobedient conduct."

The only evidence on which this conviction is based was the small amount of cannabis that McClure found on the defendant when he searched him incident to the arrest based on the events in the jail parking lot.

■■ The basic question here is whether the arrest of the defendant

was lawful, and this is to be determined by whether the sheriff had reasonable grounds to believe the defendant was committing or had committed an offense viewed in light of the evidence presented at the hearing on defendant's motion to suppress. If the arrest is justified the accompanying search is also justified. Ill. Rev. Stat., ch. 38, par. 108—1; *People v. Edge,* 406 Ill. 490, 496.

■■ Section 107—2(c) of the Code of Criminal Procedure authorizes a peace officer to arrest a person when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense." This provision adopts the Federal rule and the former basis that " 'an offense has in fact been committed' " is no longer applicable. (See Committee Comments, Ill. Ann. Stat., ch. 38, § 107—2 (Smith-Hurd 1970); and Aspen, *Arrest and Arrest Alternatives: Recent Trends,* 1966 U. Ill. L.F. 241, 244-246.)

■■ The belief induced in the mind of an officer must be a reasonable belief and must appear on subsequent inquiry to have been founded on such facts as would, in the mind of a reasonable man, give rise to a suspicion that the prisoner is guilty of or implicated in a crime. A mere suspicion in the mind of an officer not so supported will not justify a search. Illinois Court has construed the reasonable grounds test of the Code quite liberally.

■■■ The actions of the sheriff in making the arrest are to be judged by the factual considerations of everyday life, and any assessment of the reasonableness of the sheriff's conduct should take into consideration the sheriff's responsibility and duty to maintain order, prevent crime and to apprehend criminals along with the fact that he had to act on a quick appraisal of the information before him. (*Brinegar v. United States,* 338 U.S. 160; *People v. Watkins,* 19 Ill.2d 11; *People v. Cain,* 35 Ill.2d 184, 196; *People v. Pruitt,* 79 Ill.App.2d 209.) Reasonable grounds do not require the same quantum of evidence to support a conviction and may be founded on evidence that would not be admissible at the trial. *Brinegar, supra.*

■■ Defendant in the instant case concedes that the sheriff has the right to make reasonable jail rules but contends that merely talking to a prisoner in violation of a rule is not a crime. When, as here, the officer hears "yelling" so loud that his attention had been attracted to it, he is justified in investigating the source; in fact, he has a duty to do so. The creation and maintenance of loud and raucous noises of all sorts has traditionally been regarded as disorderly. (See Committee Comments, S.H.A. ch. 38, § 26—1 (1970).) Refusal to obey the lawful order of police may form the basis of a disorderly conduct prosecution. (*City of Chicago v. Jacobs,* 46 Ill.2d 214.) Failure to obey directions of a police

officer, not exceeding his authority, may interfere with the public order and lead to a breach of the peace. *People v. Galpern* (1932), 259 N.Y. 279, 181 N.E. 572, 83 A.L.R. 785.

We believe that the circumstances of this case presented the sheriff with reasonable grounds to believe that the defendant had committed an offense. Under the facts of this case, we think the trial judge properly denied defendant's motion to suppress. The judgment of the Circuit Court of McDonough County is affirmed.

Judgment affirmed.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

The issue, as stated by the majority, is whether the arrest of the defendant was lawful and this is dependent upon whether the sheriff had reasonable grounds to believe the defendant was committing or had committed an offense viewed in light of the evidence presented at the hearing on defendant's motion to suppress. It is my conclusion the police officers here lacked reasonable grounds to believe defendant had committed an offense. The testimony of the officers is crucial and contrary to the result reached by the majority. Sheriff Bliven testified he didn't see defendant and his two companions do anything except sit on the car, but he wondered why they were there. He specifically stated he didn't have probable cause to believe the three were planning anything, just suspicions.

The cases cited by the majority support the general principles concerning the legality of arrests but are not supportive of the result here due to the difference in factual situations. In *People v. Watkins*, 19 Ill.2d 11, 166 N.E.2d 433, the arresting officers were members of the gambling detail and knew defendant and defendant knew them. The officers watched defendant park his car and saw him go into the building, and defendant saw the officers. When defendant came out of the building 20 minutes later he ran back into the building as soon as he saw the officers were still there. In *People v. Cain*, 35 Ill.2d 184, 220 N.E.2d 195, the police officers with a warrant after knocking on the door heard defendant cry out "police" and saw him put the packet into his mouth. In *People v. Pruitt*, 79 Ill.App.2d 209, 223 N.E.2d 537, defendants, husband and wife, were arrested in a church at a time when services were not in session, and the building was locked except for one door which admitted persons into a corridor off which the church office and other rooms were located. Defendant husband was seen kneeling before the safe in the office. As can readily be seen, these cases cited by the ma-

jority are distinguishable from the case at bar where the officers, responding to what they thought was yelling outside the jailhouse, went outside and observed only that defendant and two others were sitting on the hood of a car. The deputy asked one of them whether he was talking to the prisoners and was told that he was not.

It is also of some significance that none of the three were charged with disorderly conduct. One was released with a warning not to talk to the prisoners again. Another was told that the charge was trespassing and was released after being fingerprinted and searched. When defendant was searched a small amount of cannabis was found, and he was the only one booked and jailed and not for disorderly conduct.

The majority's hypothesis seems to be that defendant and the others could have been arrested for disorderly conduct, and yet none of the three were so charged. Although it is not necessary to bring subsequent charges to justify an otherwise valid arrest, in the case at bar there were no reasonable grounds for believing defendant and the others had committed an offense, and, accordingly, I believe the arrest was illegal, the search incident to this arrest improper, the evidence should have been suppressed and therefore the conviction should be reversed.