THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMAN WINSLOW *et al.*, Defendants-Appellants.

(No. 73-313;

Second District (1st Division)—March 31, 1975.

Katz, Hirsch, & Wise, of Chicago (Frederic F. Cohn, of counsel), for appellants.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel) for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants Norman Winslow, Jimmie W. Lauderdale and Ira Newton were convicted after a joint bench trial and sentenced for the offenses of attempt burglary (2-8 years in the penitentiary), attempt theft (1 year in the penitentiary) and possession of burglary tools (1-2 years in the penitentiary). The sentences were to run concurrently. Each of the defendants appeal. Each contends that the attempt burglary and attempt theft indictments are void, that they were improperly arrested and that this tainted the fruits of the subsequent search, and that the sentences are improper. Defendant Newton makes the additional claim that he was not proved guilty beyond a reasonable doubt.

The defendants were arrested in the parking lot of the Oak Brook Shopping Center on February 22, 1972, by police officers of the Village of Oak Brook. Ronald Carlson, the officer assigned to patrol the area, testified that he was on surveillance in the shopping center due to recent auto thefts and was parked in an unmarked squad car in the shopping center's parking lot. About 10:30 A.M. he noticed a green van approach the parking area near the location of his car, drive down several of the parking aisles and then disappear from his sight. Approximately 5 minutes later he noticed the van as it returned to the area and parked approximately 125 feet from his car. Two men exited. Carlson said he

saw the two men approach an unoccupied car which was parked approximately 100-150 feet from where Officer Carlson was parked.

It was brought out that the car was owned by Jane Corry, who, it was stipulated, had not given anyone permission to remove the locks or enter the car. Officer Carlson testified that upon reaching the Corry car one man, whom Carlson identified as defendant Winslow, remained in back of the vehicle and began looking around in all directions, while the other man, identified by Carlson as Lauderdale, proceeded to the passenger side of the car. Carlson was parked on the driver's side of the Corry vehicle and could see only the chest-to-head portion of Lauderdale's body. He could not see his hands. The officer testified that Lauderdale "seemed to put his arms together in a motion like this (indicating) * * * and then sort of came up on his feet and then down like this (indicating)." The action was characterized as a "jerking" motion and a "pulling" motion. Carlson said that after a short time the two men began to walk away from the car at what the officer characterized as a "rather swift pace". The officer radioed for assistance and then drove his car to the parking aisle down which the two men were walking. As he drove to within 40 feet of the men he noticed defendant Lauderdale throwing an object underneath a Chevrolet station wagon, although he could not at that time see what the object was. He said that at this particular time the men were walking much faster. At this time a marked squad car which had answered Officer Carlson's call came into the area. Officer Carlson stopped the two men he had observed at the Corry vehicle, and they were then detained by another officer from the marked squad car while Carlson looked underneath the Chevrolet station wagon. He found a wire cutter type of device which had been worked into a tool and an automotive door lock. He then walked back to the Corry car and saw that the door lock had been removed.

Carlson then walked over to where the green van was parked where Officer Savaglio, who had also answered Carlson's call, was holding the defendant Newton. Carlson said he was the same man he had originally seen in the passenger seat of the van and who had moved over to the driver's seat when the two subjects left it to go to the Corry car. Carlson looked inside the van and noticed numerous tools. He then searched the vehicle and inventoried the items, describing various hand tools, an attache case on the front seat, a power "wench" [sic], a citizens band radio, various hand tools, and screwdrivers. He also saw some common tools lying in the rear of the van, such as tin snips, vice grips, a drill, and some wrenches. He opened the attache case and found a key cutter, pliers, a wire cutter, an adjustable wrench, a bent screwdriver and various key blanks with number designations on them ('66, '67, '68, '69, '70,

'71, '72). The officer stated that in his opinion, based upon his long experience, that these were burglar tools, although conceivably all of them were suitable for use in lawful jobs.

Officer Savaglio testified that he responded to Carlson's call and found the defendant Newton sitting in the passenger front seat of the van with the ignition key in the "on" position, although he could not remember whether the engine was running. He then ordered Newton to get out of the car and, in accordance with Carlson's instructions, arrested him.

The two officers were the only witnesses for the State. The defense moved for a directed finding and after this was denied, rested. The convictions followed.

■■ Defendants' initial contention that the indictment for attempt burglary is void is based on the failure of the indictment to state that the entry into the motor vehicle was "without authority." The indictment as material states:

"* * * with intent to commit the offense of burglary in violation of Section 19—1(a), Chapter 38, Illinois Revised Statutes, 1971, did perform a substantial step toward the commission of that offense, in that they did knowingly remove the lock from the door of a 1966 Chevrolet motor vehicle, being the property of Jane Corry, with the intent to enter said motor vehicle and commit therein a theft * * *."

We have previously held that an indictment charging attempt burglary is valid, although the words "without authority" are omitted. In charging attempt it is not necessary to set out all the elements of the crime itself; it is sufficient when the offense charged is in the language of the statute creating the offense and contains sufficient notice to the defendant to enable him to prepare his defense and to plead any judgment in bar to a subsequent prosecution for the same offense. (*People v. La Keta* (1973), 10 Ill.App.3d 876, 877.) We conclude that the attempt burglary indictment before us is sufficient to charge the offense under the statute. (Ill. Rev. Stat. 1971, ch. 38, par. 8—4(a).) The charge alleges both the intent to commit the offense and the overt act constituting a substantial step toward commission of that offense and is, therefore, valid. *People v. Woodward* (1973), 55 Ill.2d 134, 137-138.[1]

■■ Defendant Newton's separate contention that he was not proved guilty beyond a reasonable doubt proceeds upon the reasoning that his presence in the truck, without more, is insufficient to sustain the con-

---

[1] We have previously approved the People's motion to confess error as to the concurrent convictions for attempt theft and possession of burglary tools since they arose from the same conduct as the more serious offense of attempt burglary. See *People v. Whittington* (1970), 46 Ill.2d 405, 409-10.

viction based on constructive possession of the items found in the truck. (*People v. Baxa* (1972), 50 Ill.2d 111.) However, it is not correct, as this defendant claims, that the sole evidence against him is that he was merely a passenger in the van when the police arrested Winslow and Lauderdale in the parking lot. The judge could reasonably find from the whole record that Newton was a lookout for the other defendants under the circumstances. See *People v. Smith* (1973), 10 Ill.App.3d 501, 504.

The defendants also argue that the convictions should be reversed because the trial court erred in refusing to suppress the evidence seized in the search of the van. They claim that their arrest occurred prior to the time when the officers discovered that a crime had been committed and, therefore, the arrest of defendants Lauderdale and Winslow was without probable cause. They then argue that the search of the van which followed was not based upon independent probable cause, and in any event the search of the attache case without a warrant was improper since there was no valid reason why it could not have been taken to the police station and a warrant obtained.

At the hearing on the pretrial motion to suppress, the State argued that the police had probable cause for an investigatory detention when the defendants were first held and that the actual arrest and the search incidental to it did not take place until after the officer discovered the discarded lock and the lockless door on the Corry car. The State contended that this discovery provided ample probable cause to arrest the defendants. In this court, the State has maintained that the initial detention was justified on the basis of the doctrine of "stop and frisk," that the arrest was thereafter based on the investigation which resulted in probable cause to arrest and that the search is justified as properly incidental to the arrest. The defendants, however, object to application of the doctrine of "stop and frisk" in this court, claiming that the State raised no such argument in the proceedings below.

■■ We do not believe that the semantics of the "stop and frisk" doctrine are helpful under the particular circumstances and thus do not reach the question of waiver. The difference here between "detention" and "arrest" does not assume great importance under the circumstances of the case. (See *People v. Watson* (1974), 24 Ill.App.3d 237, 321 N.E. 2d 187, 190.) Although the initial stop and forcible holding of the defendants, depriving them of the right to freely leave the area, was a seizure subject to the requirement of reasonableness of the Fourth Amendment of the United States Constitution (see *Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 903-905, 88 S.Ct. 1868), the action of the officers in temporarily detaining the defendants in order to maintain the status quo while the officers gathered additional information as to the

nature of the object which they had seen Lauderdale throw under another vehicle appears entirely reasonable. This type of initial holding of a defendant can be characterized as a "forcible stop" which was approved by the Supreme Court in *Adams v. Williams* (1972), 407 U.S. 143, 32 L.Ed.2d 612, 617, 92 S.Ct. 1921.

■■ Once the door lock, which appeared to be from the Corry vehicle, and a tool ostensibly used for removing that lock were found underneath the other vehicle, the officers had adequate probable cause to arrest all three defendants. As reasonably incident to that arrest, the officers also had the authority to conduct a warrantless search of the van, where defendant Newton's arrest was made, and to seize the tools as evidence of the offense. *People v. Zazzetti* (1972), 6 Ill.App.3d 858, 862; see Ill. Rev. Stat. 1971, ch. 38, par. 108—1.

■■ Assuming, however, as the defendants contend, the actions of the officers during the initial stages of the defendant's detention amounted to an arrest without probable cause rather than a "forcible stop," this fact would not affect the decision in this case. The trial court does not lose jurisdiction to try the defendants because of an illegal arrest. (*People v. Finch* (1971), 47 Ill.2d 425, 436; *People v. Bliss* (1970), 44 Ill.2d 363, 369.) It also would not affect the validity of the search and subsequent seizure of the tools, for the defendant's suspicious behavior and the discovery of the door lock and tool established probable cause to search the van which was in the immediate vicinity and in which defendant Newton was stationed at the time of the crime. The validity of a search conducted pursuant to probable cause, unlike a search incidental to an arrest, is not dependent upon the existence of probable cause to arrest. (*People v. Babic* (1972), 7 Ill.App.3d 36, 42. See also *People v. Powell* (1972), 9 Ill.App.3d 54, 57.) Neither does the failure of the officers to secure a search warrant in this situation invalidate the search. Because of the van's mobility and because it was impossible for the officers to determine if the defendants were the only people connected with the crime, it was reasonable for the officers to conduct a warrantless search in order to prevent the possible destruction of evidence.

We conclude that there were appropriate circumstances for the officers to "forcibly stop" the defendants for an investigation of possible criminal behavior and that the search of the van and the seizure of the tools was reasonably justified either as incidental to a valid arrest or by the presence of independent probable cause.

■■ The defendants were each sentenced to a term of 2-8 years in the penitentiary for the attempt burglary. In their brief, the defendants argue that pursuant to the provisions of the Unified Code of Corrections

attempt burglary is a Class 4 felony with a possible sentence of a minimum of 1 year and a maximum of 3 years. In support of this argument they cite *People v. Scott* (1973), 14 Ill.App.3d 211. The defendants subsequently moved in this court to reduce the sentence to 1-3 years. The State confessed error and joined in the defendants' motion to so reduce the sentences. This court entered an order approving the confession of error and withdrawing the issue from argument on appeal. Subsequently, however, *People v. Scott* was reversed. (See *People v. Scott* (1974), 57 Ill.2d 353.) The supreme court gave effect to the intent of the legislature and held that the attempt to commit a forcible felony shall not exceed the sentence for a Class 3 felony which, under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)) is subject to a 1-10 year sentence, but with the proviso that the minimum term may not exceed one-third of the maximum. In this case defendants' sentence could have thus remained as a minimum of 2 years with a maximum of 8 years.

While we have authority (*Mt. Vernon Girl Scout Council v. Girl Scouts of United States of America* (1965), 55 Ill.App.2d 443, 448-49) to again consider the issue and, if we wish, to remand the case for a resentencing hearing before the trial court applying applicable sentencing provisions, we do not choose to do so under the circumstances here. We therefore reduce the sentence to 1-3 years in accordance with the so-called confession of error.

■■ For the reasons we have stated we affirm the judgment below finding each defendant guilty of attempt burglary and adjudge the sentence of each to be 1-3 years in the penitentiary. The convictions and sentences based on the counts of attempt theft and possession of burglary tools are vacated.

Affirmed as modified in part, vacated in part.

GUILD and HALLETT, JJ., concur.