THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HOWARD BEALL (Impleaded), Defendant-Appellant.

Fourth District No. 12903

Opinion filed October 7, 1976.

CRAVEN, J., specially concurring.

Richard J. Wilson and Richard E. Cunningham, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction of burglary upon the verdict of a jury and a sentence of one and one-half to eight years imposed.

The sole issue argued upon appeal is that the trial court erred in

denying defendant's motion to suppress as evidence three boxes of jewelry which defendant dropped as the arresting officers approached. We affirm.

Arresting officers Barnett and Tolley of the Springfield Police Department testified that at approximately 3:45 a.m. on September 1, 1973, they observed an automobile being driven by one McNear. Officer Barnett testified that he was aware of McNear's prior criminal record. Travelling in an unmarked automobile, the officers followed McNear a mile and a half until he parked in a residential area. The officers parked their vehicle about a quarter of a block away, facing McNear's automobile. The officers observed McNear and defendant get out of the car, walk up the street and eventually disappear between some houses. Officer Barnett testified that he was also aware of defendant's prior criminal record.

Waiting for McNear and defendant to return, the officers positioned themselves next to some bushes adjacent to a home facing McNear's parked automobile. After 30 to 45 minutes McNear and defendant were observed running in the middle of the street toward McNear's automobile. As McNear and defendant ran to the passenger's side of the automobile, the out-of-uniform officers approached. Officer Barnett testified that at this time he observed defendant carrying three small boxes.

The officers shined flashlights on McNear and defendant and exclaimed, "Hold it. Police officers." McNear testified that someone stated, "Police. You're under arrest. Halt." Defendant then dropped the boxes he had been carrying, jewelry spilled onto the ground, and defendant and McNear ran in opposite directions. While chasing McNear, Officer Barnett drew his weapon and fired three warning shots. McNear was not apprehended at this time. Defendant was apprehended by Officer Tolley approximately 100 feet from McNear's parked automobile.

When defendant stopped, he pulled a sock out of his pocket and put his hands in the air. Officer Tolley retrieved the sock from the defendant and frisked him for weapons. After returning to McNear's parked automobile, Officer Tolley conducted a more thorough search of defendant and discovered three pieces of jewelry and a cut-off nylon stocking in defendant's coat pockets. Defendant was then informed he was under arrest. Almost contemporaneously, a message was transmitted over the police radio that a robbery or burglary had occurred at 909 Greenview Drive (approximately 1½ blocks from where McNear's car had been parked). The three boxes and the assortment of jewelry contained therein dropped by defendant were taken into custody by officer Tolley.

Defendant and McNear were charged by an indictment with the offenses of armed robbery, robbery, burglary, and armed violence. The

court ordered a severance of the two cases. On motion of the State, the armed robbery and the robbery counts against defendant were dismissed prior to trial.

The court sustained defendant's motion to suppress the items which had been taken from the defendant (the sock and the three pieces of jewelry), on the grounds that there was not probable cause to arrest defendant.

■■ The defendant argues that the three boxes and contents were the fruit of an illegal arrest and that defendant dropped the boxes when he thought he was under arrest as the result of the police announcing their presence.

The prosecution argues that there was, in fact, probable cause to arrest but that in any event, under the court's ruling, the boxes were abandoned prior to the consummation of the arrest, *i.e.*, the actual taking into custody. Section 107—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—5(a)) provides:

> "An arrest is made by an actual restraint of the person or by his submission to custody."

It is clear that at the time the boxes were dropped, defendant was not restrained and his flight contradicts any claim of submission to arrest. This was the rule stated in *People v. Jackson* (1968), 98 Ill. App. 2d 238, 240 N.E.2d 421. The boxes being dropped by defendant on the street were in plain view and the seizure by the officer did not violate the constitutional rights of the defendant. *People v. Sylvester* (1969), 43 Ill. 2d 325, 253 N.E.2d 429.

As we read the record, the trial court reasoned that as of the time of the pursuit, the officers had no information that a robbery committed by defendant actually had been so committed, so that the officers had no occasion or reason to stop defendant. The court concluded that there was an attempted arrest without grounds for such, but there had been no illegal seizure of the boxes under the rule of *Sylvester*.

The fundamental issues argued by the parties is whether there was probable cause to arrest. Section 107—2(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c)) authorizes an arrest by an officer if:

> "He has reasonable grounds to believe that the person is committing or has committed an offense."

It is to be recalled that prior to the Code of Criminal Procedure of 1963, the statute authorized an officer to arrest without a warrant only when an offense was committed or attempted in his presence, or "when a criminal offense has * * * been committed, and he has reasonable grounds for believing that the person to be arrested has committed it." (Ill. Rev. Stat. 1963, ch. 38, par. 657.) (See Committee Comments, Ill. Ann. Stat., ch. 38,

par. 107—2 (Smith-Hurd 1970).) The present statute does not require that an officer know that an offense has actually been committed before an arrest may be made. *People v. Pruitt* (1967), 79 Ill. App. 2d 209, 223 N.E.2d 537; *People v. Clay* (1971), 133 Ill. App. 2d 344, 273 N.E.2d 254; *People v. Yocum* (1974), 24 Ill. App. 3d 883, 321 N.E.2d 731.

Recalling the described conduct of the parties, we believe that the officers had probable cause to arrest in the light of defendant's flight when requested to stop. *Peters v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889; *People v. Cribbs* (1972), 8 Ill. App. 3d 750, 291 N.E.2d 326; *People v. Staples* (1971), 1 Ill. App. 3d 922, 275 N.E.2d 259.

In *Peters*, a police officer heard a noise at the door of his apartment and observed two men tiptoeing furtively in the hall. As the officer entered the hall the men fled down the stairs. The court observed that he had probable cause to arrest for attempted burglary at the time he caught the fleeing defendant. The court said (392 U.S. 40, 66, 20 L. Ed. 2d 917, 937):

> "As the trial court explicitly recognized, deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. [Citations.]"

In *Cribbs*, defendants were discovered in an industrial area at a very late hour. Although the conviction was affirmed on other grounds, the court expressed the opinion that the presence of the defendants at such time and place, plus flight on the approach of the officers, gave probable cause to arrest. In *Staples*, the court held that defendant's flight when he was stopped for questioning gave probable cause for arrest.

Defendant relies upon *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, as holding that flight does not justify an inference of guilt. The facts there, however, were quite different. The officers came to defendant's door under pretext without a warrant to arrest or search, and without probable cause to arrest. Noting that there was no lawful entry by the officers it was held that defendant's flight down the hall to his apartment and family was "ambiguous conduct" which did not support an inference of guilt. Here the "Stop" was "in a public place," as provided in section 107—14 of the Code.

Assuming arguendo that the facts of record do not support an arrest for probable cause upon flight of defendant, we note that section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 107—14) provides:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the

circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

Such statute codifies the holding of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.

The trial court apparently concluded that section 107—14 did not permit a search for the items suppressed since the officers could not arrest in the absence of prior knowledge that the burglary had been committed.

■■ The officers had observed the conduct of the two known criminals as they travelled by automobile into a residential district between 3 and 4 a.m., then proceeding on foot a block and one-half between two residences to reappear some 30 minutes later carrying packages or boxes. It would not be unreasonable to infer a species of flight as the officers observed the men running to their automobile. Such circumstances constitute sufficient "specific and articulable facts" to investigate the conduct. *Terry v. Ohio; People v. Ussery* (1975), 24 Ill. App. 3d 864, 321 N.E.2d 718; *People v. Felton* (1974), 20 Ill. App. 3d 103, 313 N.E.2d 642.

As stated in *Terry* (391 U.S. 1, 23, 20 L.Ed. 2d 889, 907):

"It would have been poor police work indeed * * * to have failed to investigate this behavior further."

In *Adams v. Williams* (1972), 407 U.S. 143, 145-46, 32 L. Ed. 2d 612, 616-17, 92 S. Ct. 1921, the court said:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. [Citation.]

A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may. be most reasonable in light of the facts known to the officer at the time. [Citations.]"

■■ The act of the officers in identifying themselves and requesting defendants to stop, or in this instance, "Hold it," does not necessarily amount to an arrest. *People v. Bridges* (1970), 123 Ill. App. 2d 58, 259 N.E.2d 626; *People v. Clay* (1971), 133 Ill. App. 2d 344, 273 N.E.2d 254.) Accosting an individual to inquire concerning his identity and actions does not amount to an arrest. *People v. Howlett* (1971), 1 Ill. App. 3d 906, 274 N.E.2d 885.

In *Adams v. Williams* (1972), 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, the court recognized the validity of a "forcible stop" for purposes of investigation. Our statute, section 107—14, contains language that an officer who had identified himself, "may stop any person in a public place for a reasonable period of time \* \* \*" and such action is referred to as "detention and temporary questioning" as distinguished from an arrest.

■■ The response of defendant to the announcement by the officers was flight from the automobile and the dropping or discarding of the boxes. Flight from an identifying officer subsequent to the initial stop may provide probable cause to arrest. *People v. Staples* (1971), 1 Ill. App. 3d 922, 275 N.E.2d 259.) In *People v. Clay* (1971), 133 Ill. App. 2d 344, 273 N.E.2d 254, the trial court suppressed a gun discarded during flight by defendant holding that there was no evidence that a crime had been committed, that there had been no probable cause to arrest and that running from the officer did not constitute a crime. The reviewing court reversed holding that the officer might reasonably inquire into the flight and that a gun discarded during such flight authorized an arrest. In *People v. Winslow* (1975), 26 Ill. App. 3d 1035, 325 N.E.2d 426, an officer was engaged in a surveillance of a business parking lot. He observed two men approach in a van, park it and engage in some activity at the door of a parked car. The men left hurriedly as the officer approached, one throwing an object under a parked automobile. The officers stopped the men and when the discarded object was retrieved and found to be a burglary tool, and they further found that the car where the men had been working was open, arrested them. In *People v. West* (1973), 13 Ill. App. 3d 550, 300 N.E.2d 808, it was held proper under the circumstances for officers to detain a man observed running down the street and to arrest when the officers observed a discarded weapon.

We conclude that the officers had such "specific and articulable facts" through personal observation that they were authorized by the statute to stop the defendant for purposes of ascertaining his identity and "an explanation of his actions," and that when the boxes of jewelry were dropped and defendant immediately fled there was probable cause to arrest.

The judgment is affirmed.

Affirmed.

GREEN, J., concurs.

CRAVEN, J., concurs in the result.