THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES WASHINGTON, Defendant-Appellee.

First District (6th Division)    No. 1—93—1286

Opinion filed January 27, 1995.—Rehearing denied February 27, 1995.

EGAN, J., dissenting.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

John W. Cutrone, of Chicago, for appellee.

JUSTICE ZWICK delivered the opinion of the court:[1]

The State has appealed an order entered at the conclusion of defendant's trial which reversed the trial court's previous denial of defendant's motion to quash his arrest and to suppress evidence. On appeal, the State contends that (1) the evidence presented was sufficient to support the police officers' stop of defendant and subsequent search of the vehicle in which the contraband was found, and (2) the trial court abused its discretion in refusing to allow the prosecution

---

[1]Although Justice Zwick did not serve as a member of the original panel assigned to this case, he has read the briefs, listened to the tape of oral argument, and has otherwise fully participated in the disposition of this case.

to present additional evidence in opposition to defendant's motion to suppress.

Defendant, Charles Washington, was charged with possession of cocaine and marijuana with the intent to deliver. He filed a motion to quash his arrest and to suppress evidence. At the hearing on the motion to quash and to suppress, defendant called Monica Lewis, who testified that on the night of February 15, 1990, defendant was in her apartment. Ms. Lewis stated that when defendant left the apartment at approximately 6:30 p.m., she was looking out of the window. According to Ms. Lewis, a police car pulled up in front of the building as defendant was coming out of the front door. A male officer called defendant over to the squad car while a female officer went over to a vehicle which was parked nearby and began to search it. After searching the interior of the car, the female officer took the keys from the ignition and opened the trunk. Ms. Lewis stated that the female officer removed a brown paper bag from the trunk and took something out of the bag. Defendant was then arrested.

Defendant testified that on the evening of February 15, 1990, he was wearing a blue Chicago Bears "starter jacket" and a dark blue hat. On that date, defendant was with Monica Lewis and a man known as "Slim" at Ms. Lewis' apartment. Defendant stated that "Slim" was the boyfriend of his sister, Brenda Foreman, and that "Slim" was using Foreman's car. Defendant asked to use the car to go buy liquor, and "Slim" gave him the keys. At about 6:20 p.m., defendant went outside and started the car. He then went back inside Ms. Lewis' apartment, leaving the car running and unattended. Approximately five minutes later, defendant went back out to the car to go to the store. As he left the apartment building, a squad car pulled up. As defendant approached Foreman's car, a male police officer called defendant over to the squad car and said that defendant fit the description of the perpetrator in a robbery of a restaurant which was two blocks away. The male police officer told defendant to put his hands on the squad car and conducted a pat-down search of defendant. Defendant testified that while he was with the male officer, a female officer searched Foreman's car and found a brown paper bag in the trunk. Thereafter, defendant was placed under arrest.

Defendant rested after presenting the testimony of these two witnesses, and the prosecution moved for a directed finding on the motion to quash and to suppress. The trial court granted the prosecution's request, finding that defendant did not have standing to challenge the search of the vehicle.

At trial, two Chicago police officers testified for the prosecution. According to the officers' testimony, they received a radio dispatch at

approximately 6:30 p.m. on February 15, 1994, that a restaurant in their vicinity had been robbed. At that time, they observed defendant brushing snow from a parked vehicle which had its motor running. The officers testified that they approached defendant because he fit the description of the perpetrator of the robbery contained in the radio dispatch. The officers exited their squad car, drew their guns, and told the defendant to walk to the rear of his car. When the officers reached the defendant's vehicle, they saw in plain view on the front seat a clear plastic bag containing blocks of a white powdery substance and another bag which held a green leafy substance and money. Defendant was then arrested.

The parties stipulated that the bags contained 1,257 grams of cocaine and 74.9 grams of marijuana. It also was determined that defendant was not involved in the restaurant robbery. The prosecution then rested.

Defendant called Brenda Foreman, who testified that, on February 15, 1990, she had loaned her car to a friend known as "Slim." Foreman stated further that when she last saw the car, it did not contain any drugs.

Monica Lewis was called as a witness on behalf of defendant. Ms. Lewis' trial testimony was substantially the same as that presented at the hearing on defendant's motion to suppress.

Defendant also testified to substantially the same facts as those presented at the hearing on his pretrial motion.

After the parties presented their closing arguments, the trial court noted that defendant's pretrial motion to suppress was still before the court for reconsideration. The trial judge stated that he would read the transcript of the hearing on the motion to suppress as well as the officers' trial testimony regarding the stop and search of defendant. Approximately three weeks later, the trial court vacated its original ruling on the motion to suppress. In a written memorandum and order, the court stated the previous determination that defendant did not have standing to challenge the search of the vehicle was in error.

The court then offered to continue the matter to allow the prosecution an opportunity to present additional evidence in response to defendant's motion to suppress. The prosecution declined the offer and stated that it would rely on the evidence presented at trial. The matter was continued until March 2, 1993, and on that date, the prosecution attempted to reopen the hearing on defendant's motion to suppress in order to present evidence of the description of the perpetrator of the robbery which was included in the radio dispatch received by the officers who arrested defendant. The trial court denied

this request, but allowed the prosecutor to make an offer of proof. Accordingly, the prosecutor stated that if called as a witness, Chicago police officer Willy Johnson, one of the arresting officers, would testify:

> "On the date and time in question, approximately six thirty p.m., he received a flash message of a robbery suspect who had fled westbound into Chatham Park. A description at that time was given of a male black wearing a blue coat and black hat.
>
> Within a matter of approximately two minutes he arrived in the Chatham Park area with his partner, he observed the defendant at that time, a male black who was wearing a blue coat and a black hat, which he inventoried."

The trial court granted the defendant's motion to suppress and ordered a mistrial, and the State appealed.

The State first contends that the trial court erred in granting defendant's motion to quash his arrest and suppress evidence.

An investigatory stop is justified only when the police have knowledge of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; *People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327.) In determining whether a stop is reasonable, an objective standard is used. (*People v. Galvin* (1989), 127 Ill. 2d 153, 167, 535 N.E.2d 837; *People v. Creagh* (1991), 214 Ill. App. 3d 744, 747, 574 N.E.2d 96.) Thus, the prosecution must present evidence of the specific facts available to the police officers which would warrant a person of reasonable caution to believe that the action taken was appropriate. (*Creagh*, 214 Ill. App. 3d at 747; *People v. Worlow* (1982), 106 Ill. App. 3d 112, 114, 435 N.E.2d 795.) Testimony by an arresting officer that the defendant "fit the general description" of an offender is insufficient to uphold an investigatory stop where no specific information is provided regarding the description of the perpetrator. *People v. Talley* (1975), 34 Ill. App. 3d 506, 509, 340 N.E.2d 167; *People v. Moorhead* (1974), 17 Ill. App. 3d 521, 527-28, 308 N.E.2d 381.

In the instant case, the only evidence introduced to explain the detention of the defendant was the officers' testimony that the defendant "fit the description of the robbery suspect." The prosecution introduced no testimony as to the specific description of the physical characteristics or clothing of the perpetrator of the robbery, nor did the prosecution present any evidence regarding the appearance or clothing of the defendant at the time of the stop. Upon reconsideration of the motion to suppress, the trial court considered all of the evidence presented at the hearing on the motion to suppress as well as

the officers' testimony at trial. The court noted that the officers' conclusion that the defendant fit the general description of the perpetrator was not supported by any evidence adduced at the hearing on defendant's motion or at trial.

At the conclusion of the trial, the record was devoid of any evidence of the perpetrator's appearance. No testimony had been presented as to the approximate age, height, weight, or clothing of the perpetrator. Indeed, absent the offer of proof which was not considered by the court, the record was silent as to the gender and race of the perpetrator.

■ Because no evidence of the offender's appearance had been introduced, the trial court had no opportunity to determine whether the description of the offender and the physical characteristics of the defendant were similar enough to justify the detention of the defendant. (See *Talley*, 34 Ill. App. 3d at 510; *Moorhead*, 17 Ill. App. 3d at 527-28.) We hold the trial court correctly determined that the initial stop of defendant was invalid because it was not predicated upon specific and articulable facts which would lead to the conclusion that the actions of the officers were objectively reasonable.

The State asserts, however, that the trial court erred in denying its motion to present additional evidence on the motion to suppress. Specifically, the State argues that the trial court should have reopened the hearing on defendant's pretrial motion to permit the prosecution to introduce testimony as to the specific description contained in the radio dispatch and known to the arresting officers at the time they stopped defendant.

■ It is within the sound discretion of the trial court whether to reopen a case for further proof, and this discretion will not be interfered with except where it is clearly abused. (*People v. Baer* (1974), 19 Ill. App. 3d 346, 349, 311 N.E.2d 418; *People v. Cross* (1968), 40 Ill. 2d 85, 90, 237 N.E.2d 437.) Although the prosecution was aware of and had access to the specifics of the perpetrator's description, no attempt was made to introduce this evidence even after the trial court expressed its intention to reconsider the prior ruling on the motion to suppress and specifically offered to grant a continuance to allow the prosecution the opportunity to present additional evidence. The record reflects that the prosecution declined this offer and stated that it would rely upon the evidence already presented. In refusing the prosecution's request to reopen the case, the trial court determined that the prosecution had waived its right to present additional evidence on the motion to suppress and subsequently attempted to rescind that waiver. We hold that the trial court did not abuse its discretion in refusing the prosecution's subsequent request to present such evidence.

Moreover, we note, albeit parenthetically, that even if the testimony which was tendered in the offer of proof had been admitted and considered by the trial court, it was insufficient to justify the stop of defendant. In the offer of proof, the officer stated only that the perpetrator was a "male black wearing a blue coat and black hat" who had "fled westbound into Chatham Park." Absolutely no evidence was presented as to the perpetrator's approximate age, height, or weight, whether the perpetrator had a light or dark complexion, was clean-shaven or had facial hair, wore glasses, or had any other distinguishable characteristic. In addition, no evidence was presented as to the type or style of the perpetrator's coat and hat. The only specific information regarding the perpetrator's clothing consisted of the statement that he was wearing a "blue coat and black hat." Although the arresting officers testified that the defendant was "a male black who was wearing a blue coat and a black hat," this evidence was contradicted by the defendant, who testified that he was wearing "a dark blue hat and a blue Chicago Bears 'starter jacket,' " which is a distinctive and readily discernable item of apparel. In addition, although the radio dispatch heard by the arresting officer stated that the perpetrator had "fled westbound into Chatham Park," the record contains no evidence that defendant was fleeing or engaged in any suspicious activity. The record reflects that the defendant was brushing snow from a parked car when he was first observed by the officers, and he made no attempt to flee even after the officers stopped and identified themselves.

Although the standard articulated in *Terry* does not require that the description of an offender match the defendant's physical characteristics in every detail in order to justify an investigative stop by the police, we hold that something more is required than the vague and incomplete description presented in the instant case. The arbitrary detention of individuals on the street based on nothing more substantial than the inarticulate hunches of the police officers cannot be sanctioned. (See *Moorhead*, 17 Ill. App. 3d at 528.) The trial court did not err in granting defendant's motion to quash and to suppress evidence based on the evidence presented at the hearing on defendant's pretrial motion and at trial.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

RAKOWSKI, J., concurs.

JUSTICE EGAN, dissenting:

Because of the conclusion made by the majority that the barred testimony would not have supported the arrest as a matter of law, I deem it appropriate to set out the issues the parties have presented to us and the way they have been presented. The State initially maintained that the trial judge erred in granting the defendant's motion to suppress; and in its argument the State relied, in part, on the evidence contained in its offer of proof, that is, that the officers were "looking for [a] black man in a blue jacket and a black hat, which is the description of defendant at the time of his arrest."

In his response, the defendant contends that the barred testimony should not be considered but adds, in a footnote, that the arrest would not be justified, even if the barred testimony were properly to be considered. The State filed a reply brief but did not respond to the footnote statement. I assume that the State felt that the cases it cited in its initial argument constituted a response to the cases cited by the defendant.

I agree with the defendant that we should not consider the barred testimony in determining whether the judge erred in suppressing the evidence, but I am not prepared to accept the defendant's alternative argument, as apparently the majority does, that, *as a matter of law*, all the evidence, including the barred testimony, would not justify the arrest. Moreover, in my judgment the rules governing orderly appellate practice dictate that we should not consider the alternative argument for the reason that it has not been properly presented to us. Issues should be presented forthrightly and clearly to reviewing courts as well as trial courts and not as an aside or obscurely in a footnote. See *Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 453 N.E.2d 820; *Home Insurance Co. v. Liberty Mutual Insurance Co.* (1994), 266 Ill. App. 3d 1049, 641 N.E.2d 855.

What the majority implicitly says is that if the judge had allowed the motion to reopen the proof and had considered the additional testimony, he would have committed reversible error if he denied the motion to suppress. What the majority says in this case may be cited as precedent in many cases to come. I think it unwise and inappropriate for us to make an expression on the sufficiency of the evidence based on the manner in which it has been presented to us. I point out also that that argument was not made in the trial court.

Finally, I am not confident that the arrest would still be unjustified if the barred testimony had been admitted. The majority does not cite any case in that part of the opinion in support of its holding; but, as noted, the defendant cites several cases in the footnote. All of the cases cited by the defendant are factually inapposite. For example, in *People v. Gabbard* (1979), 78 Ill. 2d 88, 398 N.E.2d 574,

the officer admitted that the defendant did not match the description the officer had received and that he arrested the defendant based on a police policy to check out everybody found walking on the road. In *In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606, also cited by the defendant, the officer testified that he arrested the defendant and two other boys because it "looked" to the officer that the boys were truants. The appellate court concluded that the description of the boys was not the basis of their detention. I believe that at least one case would be respectable authority for the State's position if the barred testimony had been admitted. See *People v. McGee* (1987), 165 Ill. App. 3d 833, 520 N.E.2d 836.

I turn now to what was presented to us as the controlling issue: Did the trial judge abuse his discretion when he denied the State's motion to reopen the proof? The majority says he did not; and I say he did.

The judge originally denied the motion to suppress on the ground that the defendant lacked standing. After he heard all the evidence and closing arguments, the judge, *sua sponte*, raised the motion to reconsider his denial of the motion to suppress. I am frank to say I do not know what additional evidence he heard at the trial that would affect standing. After he vacated his order he offered to permit the State to present evidence and made some observations worth repeating:

> "I will set the matter for further hearing on the Defendant's motion to quash arrest and suppress evidence or grant a continuance in order for the State to consider whether or not there is any further evidence that it cares to adduce, *being mindful that I have heard the testimony of the relevant police officers*, I think at any rate, at the trial and I can consider the trial evidence as it bears and impacts upon the Defendant's motion to quash." (Emphasis added.)

The judge then granted the State's request for a short recess, and later the prosecutor said this:

> "In view of the Court's ruling on their reconsideration motion to suppress the State, *and you already heard the testimony*, the State would represent that that would be the testimony that they would use for the remaining portion of the motion to suppress." (Emphasis added.)

I ask rhetorically at this point: Was it so unreasonable on the part of the prosecutor, in view of the judge's reference to his having already heard the "relevant" testimony of the officer, to believe that the State had presented sufficient evidence to justify the arrest? I do not think so. He may have been wrong but not unreasonable. At a

later date, the judge denied the motion to reopen proof without knowing what the evidence would be. After the denial he allowed the State to make an offer of proof, and the offer of proof did not change his mind.

Other questions arise in my mind: How would the defendant be prejudiced if the judge had allowed the State's motion to reopen the proof? Neither the trial judge nor the majority has expressed any reason for the denial of the State's motion other than it came late. And what would be the posture of this case if it was the defendant who made the motion to reopen the proof and established that that proof was, indeed, probative? There is no doubt in my mind that, if the judge had denied the defendant's motion to reopen the proof to introduce concededly probative evidence, the defendant would be urging two things on appeal: (1) that the judge abused his discretion and (2) that his attorney was guilty of ineffective assistance of counsel for failure to produce the evidence at the hearing. And there is no doubt in my mind that the defendant would make a respectable case for reversal.

The effect of the majority's holding is this: the judge may change his mind; a defendant may change his mind; but the State may not. It has been said before and bears repeating that a criminal trial is a search for the truth and is not a game. (*In re Lamb* (1974), 21 Ill. App. 3d 827, 837, 316 N.E.2d 42.) And if it is to be treated as a game, at least both sides should have a level playing field. The State did not have one in this case.

For these reasons, I respectfully dissent.