NO. 4-97-0154

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Vermilion County

WILLIE J. COX, ) No. 96CF133

Defendant-Appellant. ) 

) Honorable

) Thomas J. Fahey,

) Judge Presid­ing.

JUSTICE GREEN delivered the opinion of the court:

Following a bench trial on October 29, 1996, defendant, Willie J. Cox, was convicted of possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 1994)).  He was subsequently sentenced to 30 months' probation, conditional upon serving one year in jail, to run concurrently with a nine-month jail term in Vermil­ion County case No. 96-CF-560.  Defendant appeals, contending (1) the trial court erred in denying his motion to suppress the cocaine found in his possession and (2) he is entitled to a $5-per-day credit against his $400 fine.  We reverse.

On March 29, 1996, defendant was arrested for posses­sion of a controlled substance.  On July 31, 1996, defendant filed a motion to suppress evidence of cocaine seized from his possession.  The motion alleged that on March 29, 1996, he was detained by the police, searched without a warrant or proba­ble cause, and, as a result, cocaine was illegally seized.

At the hearing on the motion to suppress, defendant testified that (1) on the day in question, he was in the "Pizza Inn" parking lot on Oak and Williams Streets, about to use the tele­phone, and wearing a short-sleeved green shirt with "blue-check­ered spots" when two police officers approached him; (2) the officers told him to put his hands on the squad car; (3) he put his hands on the car; (4) the officers started checking his pockets, he asked them what he was being arrested for, and they told him about a purse snatching; (5) sometime after he had his hands on the squad car, he re­trieved cocaine from his pants' pocket in an at­tempt­ to throw it on the ground; (6) the police seized the cocaine from his hand; (7) one of the offi­cers noted he was not out of breath; (8) he denied running prior to the offi­cers approaching him and claimed he had just awakened and had come outside; and (9) he is 6 feet 3 inches tall and weighs 210 pounds. 

City of Danville police officer James Smutz testified (1) he received a dispatch report of a robbery in the new library parking lot at Seminary and Vermilion Streets; (2) the suspect was described as a black male, wearing a blue, short-sleeved shirt, approximately 5 feet 8 inches tall; (3) near the library on Franklin and Seminary, a man sitting in his backyard told Smutz he had just seen a black male in a blue shirt running west­bound on Seminary Street; (4) Smutz proceeded westbound on Seminary for one block, turned north on Oak Street, proceeded one block to Williams Street, and observed defendant in the parking lot of the "Pizza Inn" (three blocks west and one block north of the library parking lot); (5) between the time he began his search and found defendant, he had not seen any other black males wearing a blue shirt; (6) he and Officer 
Dicken approached defendant and told him to put his hands on the squad car; (7) defendant insert­ed his left hand in his left front pants' pocket and pulled something out while maintaining a fist; and (8) Smutz grabbed defendant's left arm, defendant opened his fist, and inside was a clear, plastic bag containing what appeared to be three rocks of crack cocaine.  

Officer Smutz stated he could not recall if he told defen­dant they had to search him for evidence of the stolen wallet before defendant placed his hand in his pocket.  Officer Smutz subsequently acknowl­edged that his testimony at the grand jury hearing one week after the arrest was that they stopped defen­dant, and before defendant pulled the cocaine out of his pocket: 

"[He] ex­plained to [defendant] why [he] stopped him [a]nd told [defendant] that [he] would have to check him for any­thing that may have been taken from the wal­let and take him back to the library for a show up.

***

When we told him that we had to check him[,] he imme­di­ately threw his left hand into his front pants pocket and we helped him bring it out."

Officer Smutz further testi­fied at the hearing that defen­dant was wearing a blue and green shirt at the time of the arrest, but he did not recall the pattern of the shirt other than it con­tained as much blue as it did green.

Based on the foregoing evidence, the trial court found that the police could lawfully detain defendant and deter­mine whether he had any connection with the wallet theft.  The court concluded that defendant's action in retriev­ing the cocaine from his own pocket was an "intervening cause" that resulted in the discovery and seizure of the cocaine.  The court denied the motion to suppress.

A bench trial was held on October 29, 1996.  Officer Smutz was the only witness to testify and his testimony was essentially the same as it was at the suppression hearing.  Office Smutz explained that he and Officer Dicken approached defen­dant, "gave him a brief account of why [they] were there, that there had been a theft in the area and asked him to put his hands on Officer Dicken's car."  According to Smutz, defendant "immedi­ate­ly threw his left hand into his front pants pocket and pulled it out maintaining a fist."  The officers then found the bag of cocaine within defendant's left hand.  The officers placed defendant under arrest for possession of a controlled substance and brought him to the library for a "show up" to determine if he was the individual who stole the purse.  Smutz acknowledged that based on the "show up," defendant was cleared of the charge of theft.  At the conclusion of the trial, the court found defendant guilty of possession of a controlled substance.

Initially, the State contends defendant has waived review of the trial court's denial of his motion to suppress by failing to raise the issue in a posttrial motion, relying on 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30 (1988).  Although the court in 
Enoch
 held that failure to raise an issue in a posttrial motion results in a waiver of the issue on appeal, the court listed the following exceptions to the waiver rule:  "constitutional issues which have properly been raised at trial and which can be raised later in a postconvic­tion hearing petition [citation], sufficiency of the evidence, and plain error."  
Enoch
, 122 Ill. 2d at 190, 522 N.E.2d at 1132.  The 
Enoch
 court considered the denial of that defendant's motion to suppress statements, even though he did not raise the issue in a written posttrial motion, presumably under the consti­tutional issue exception to the waiver rule.  See also 
People v. Schrems
, 224 Ill. App. 3d 988, 994, 586 N.E.2d 1337, 1342 (1992).

Accordingly, because defendant's contention that the court erroneously denied his motion to suppress is a constitu­tional issue, it is reviewable on appeal even though defendant failed to raise it in a written posttrial motion.

In the alternative, the State contends that pursuant to 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the officers here could lawfully detain defendant to investigate whether he was the man who perpetrated the theft at the library.  For reasons we will discuss, we agree with the State on this point.  However, the State also contends the officers could lawfully seize the cocaine in defendant's posses­sion either because (1) the cocaine was found during a lawful frisk for weapons under 
Terry
 or (2) defendant placed the cocaine in the officers' plain view by pulling it out of his pocket.  We disagree with the State that the seizure here was valid and, as we will discuss, we conclude (1) defendant was being searched for the proceeds of the theft when he pulled out the cocaine and that search exceeded the limited 
Terry
 frisk for weapons and (2) the cocaine was not lawful­ly seized under the plain view doc­trine.  Thus, the cocaine must be suppressed, as fruits of an illegal search is in viola­tion of the fourth amendment.

In 
Terry
 (392 U.S. at 29-30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884), the United States Supreme Court articu­lat­ed a "stop-and-frisk" analysis that provided it was constitu­tion­ally permis­sible for a police offi­cer, who observes unusual activity that he believes may involve dangerous criminal conduct, to temporarily stop a person for questioning and, at times, subject that person to a limited frisk for weapons based on circumstances that may not rise to the level of probable cause to arrest.  The 
Terry
 court reasoned that such an investigative stop was reason­able under the fourth amendment as long as the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, 
reasonably warrant that intrusion."  
Terry
, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  The 
Terry
 stop was codified in section 107-14 of the Code of Criminal Procedure of 1963 (Code), as follows:

"Temporary Questioning without Arrest.  A peace officer, after having identified him­self as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is commit­ting, is about to commit or has committed an offense as defined in [s]ection 102-15 of this Code, and may demand the name and ad­dress of the person and an explanation of his actions.  Such detention and temporary ques­tioning will be conducted in the vicinity of where the person was stopped."  725 ILCS 5/107-14 (West 1996).

The evidence introduced to justify the stop of defen­dant came from Officer Smutz, who believed defendant fit the general description of the man who committed the robbery and was found at a location consistent with the direction the suspect was seen fleeing.  However, there was no dispute that defendant was much larger than the description of the suspect, the short-sleeved shirt defendant was wearing had a blue pattern and was not just "blue" as in the description given of what the suspect was wearing, and defendant was not breathing hard, as if he had just been running, when the police encountered him.  Moreover, the descrip­tion of the suspect did not include physical charac­teris­tics as to hair, glasses, weight, complexion, or distin­guishing marks.  Defendant contends the evidence that he general­ly fit a vague description of the suspect does not provide a reasonable basis for the investigative stop.

Defendant relies on 
People v. Washington
, 269 Ill. App. 3d 862, 646 N.E.2d 1268 (1995).  There, defendant was charged with possession of drugs with intent to deliver.  At a hearing on a motion to suppress, defendant testified that on the night of his arrest, he was wearing a "starter jacket" and a dark blue hat.  Defendant claimed he had borrowed an automobile to go to the store, and when he left his girlfriend's apartment to get in the car, the police stopped him and told him he fit the descrip­tion of a suspect who had robbed a restaurant two blocks away.  The officer conducted a pat-down search and a search of the trunk of the car defendant was about to enter.  Based on evidence seized from the trunk of the car, defendant was arrested.  The court denied defendant's motion to suppress.  
At trial, the officers testified they received a radio dispatch giving the description of the robbery suspect.  The officers explained they stopped defendant because he matched the descrip­tion of the dispatch; however, no testimony was given as to the description contained in the dispatch.  The offi­cers claimed they then ob­served what ap­peared to be drugs in a plastic bag in plain view in the front seat of defen­dant's car.

Subsequently, the trial court reconsidered its ruling on defendant's motion to suppress and allowed the State to present additional evidence, which the State failed to do.  However, at a later date, the State attempted to reopen the case to present evidence of the specific description of the robbery suspect given to the police by radio dispatch.  The trial court allowed the State to make an offer of proof that established the suspect "had fled westbound into Chatham Park" and was described as a "male black wearing a blue coat and black hat."  
Wash­ing­ton
, 269 Ill. App. 3d at 866, 646 N.E.2d at 
1271.  Subse­quent­ly, defen­dant's motion to suppress was allowed.

The 
Washington
 court upheld the trial court's ruling, noting that "[t]estimony by an arresting officer that the defen­dant 'fit the general description' of an offender is insufficient to uphold an investigatory stop where no specific information is provided regarding the description of the perpetrator."  
Washing­ton
, 269 Ill. App. 3d at 866, 646 N.E.2d at 1272.  Initially, the 
Washington
 court concluded it did not abuse its discretion in refus­ing to allow the State to reopen the case to admit evidence of the radio dispatch description.  Nevertheless, the court noted it did not believe the radio dispatch was descriptive enough of the suspect to support the stop, as defendant's clothing at the time of the stop was readily discernable (a Chicago Bears "start­er jacket" and dark blue hat) and did not fit the description, and there was no evidence defendant had been fleeing the area or doing anything suspicious.

Here, in contrast to 
Washington
, the description of the robbery suspect was somewhat more specific in that it gave the height (admittedly shorter than defendant) and that the suspect was wearing a short-sleeved blue shirt.  However, there was additional evidence here that the suspect was seen running westbound and defendant was found three blocks west and one block north of the library parking lot soon after the robbery.  More­over, there was evidence the officer had not seen any other black males wearing a short-sleeved blue shirt in the vicinity.  The fact that defendant was taller than the description of the robbery suspect would not necessarily negate any reasonable belief that defendant fit the description of the suspect, as height is not easy to judge, particularly in difficult circum­stances.  We conclude this evidence establishes the police had enough of an articulable suspicion to stop defendant under 
Terry
 and section 107-14 of the Code.  As noted by the trial court, the fact that defendant was wearing only a short-sleeved shirt in March, similar to the robbery suspect, provided the police even more of a reason to believe defendant may have been the robbery suspect.

In any event, we do not believe the ensuing search of defendant that prompted him to reveal the cocaine in his pocket was valid under 
Terry
.  In 
Terry
 (392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884), the court outlined a limited frisk for weapons that is permitted if the police officer be­lieves the suspect is armed and dangerous and, in the course of the investi­gative stop, "makes reasonable inquiries, and *** nothing in the initial stages of the encounter serves to dispel his reason­able fear for his own or others' safety."
  This 
Terry
 frisk has been codified in section 108-1.01 of the Code, as follows:

"Search During Temporary Questioning.  When a peace officer has stopped a person for temporary questioning pursuant to [s]ection 107-14
 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons.  If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned."  725 ILCS 5/108-1.01 (West 1996).

Here, there was no evidence that at the initial stage of the stop Officer Smutz made inquiries as to defendant's in­volve­ment in the robbery or whether defendant was armed.  In fact, Officer Smutz never testified that he believed defendant was armed or that he was in fear of his safety.  There was no evidence that defendant was doing anything suspicious at the time of the stop or that the circumstances at the time of the arrest may have appeared dangerous.  The crime the defendant was being sought for did not involve a weapon and was not violent in nature.  Significantly, Officer Smutz admit­ted that he testified at the grand jury hearing one week after the arrest that after he directed defendant to place his hands on the squad car, he in­formed defen­dant he was going to search him for the stolen wallet and then defen­dant attempted to discard the cocaine from his pocket.  At the hearing on the motion to suppress, Smutz testi­fied he could not remember whether defendant withdrew the cocaine before or after he told him he was going to be searched for the wallet.  However, he acknowledged his grand jury testimony and that it took place soon after the arrest.  Under these circum­stances, the manifest weight of the evidence established that defendant was stopped, asked to place his hands on the squad car, warned he was going to be searched for the wallet, and then attempted to discard the cocaine.

We recognize that an objective standard is applied to determine whether a frisk is valid under 
Terry
, and the officers' subjective feelings of fear or lack thereof are not dispositive.  However, evidence regarding the officers' feelings is one of the factors the trial court can consider in the totality of circum­stanc­es concerning the frisk.  
People v. Galvin
, 127 Ill. 2d 153, 168, 535 N.E.2d 837, 843 (1989).  We conclude the search of defen­dant here was not valid under 
Terry
 or section 108-1.0l of the Code, as it was admittedly done to search for evidence of a crime and the circumstances at the time of the stop did not indicate defendant was dangerous.  The instant case is similar to 
Galvin
 where the arresting officer offered no arti­cul­able facts to justify search­ing the defendants for weapons and the officer testified that at no time did he believe defendants were armed or dangerous.  The 
Galvin
 court upheld the circuit court's decision to grant the defendant's motion to suppress.

The State also argues the police could have lawful­ly searched defendant's fist after he removed it from his pocket because they could have reasonably believed it contained a weapon.  In 
People v. Christensen
, 198 Ill. App. 3d 168, 172-73, 555 N.E.2d 746, 749 (1990), defendant was lawfully stopped in his vehicle and, when asked for identification, defendant pulled his hand out of his pocket revealing a portion of a cellophane bag.  Defendant then began fumbling in his pockets.  The officer testi­fied he reached over and pulled the bag out of defendant's pocket because he did not know whether defendant had a gun in his pocket.  This court held the officer could have reasonably believed defendant had a weapon in his pocket.  Here, unlike 
Christensen
, there was no testimony that Officer Smutz believed defendant had a weapon in his fist, and it is far less likely defen­dant could have concealed a weapon in his fist than in his pocket.

The State contends that because no search had yet taken place when the cocaine was discovered, the cocaine cannot be considered fruits of an illegal search.  Rather, the State maintains the instant case is similar to cases where seizures were upheld under the plain view doctrine when, following lawful 
Terry
 stops, defendants attempted to discard contraband in plain view of the police.

In 
Texas v. Brown
, 460 U.S. 730, 737-39, 75 L. Ed. 2d 502, 511, 103 S. Ct. 1535, 1541 (1983), the court discussed the plain view doctrine, stating:

"The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.  *** '[P]lain view' provides grounds for sei­zure of an item when an officer's access to an object has some prior justification under the Fourth Amendment.  'Plain view' is per­haps better understood, therefore, not as an inde­pendent 'exception' to the Warrant Clause, but simply as an extension of whatev­er the prior justi­fication for an officer's 'access to an object' may be."

In 
Brown
, the defendant was stopped in his automobile at around midnight at a routine driver's license checkpoint and the police officer, standing along side the driver's window, asked to see his driver's license.  At the same time, the officer shined his flashlight in defendant's car and observed defendant withdraw his hand from his pocket and drop a green party bal­loon, knotted at the end, on the seat next to him.  The officer then shifted his position to look into the glove compart­ment, which the defendant was opening to retrieve his license, and observed other contraband.  The officer seized the contraband and arrested the defendant.  The trial court denied defendant's motion to suppress and the Texas Court of Criminal Appeals reversed, holding the evidence should have been suppressed as it was not a lawful seizure under the plain view doctrine.  The 
Brown
 court reversed the appeals court, holding that the officer lawfully viewed the contraband in plain view and, thus, had probable cause to seize it.

Significantly, here, the 
Brown
 court concluded the initial stop of the defendant was lawful and the officer's actions in shining his flashlight in the car and positioning himself to see into the glove compartment were not a search within the meaning of the fourth amendment.  Thus, the officer was not in violation of the fourth amendment when he viewed the contraband.

Here, we have concluded the initial stop of defendant was lawful under 
Terry
.  However, defendant did not attempt to discard the cocaine after the lawful stop as in 
Brown
.  Rather, defendant attempted to discard the cocaine after the police told him he was going to be "check[ed] *** for anything that may have been taken from the wallet."  As we have decided that this search was in violation of the fourth amendment, the plain view doctrine does not provide a basis for seizure of the cocaine, even though defendant pulled it out of his own pocket prior to the search and either at­tempt­ed to throw it to the ground or hide it in his fist.

For similar reasons, the instant case is distinguish­able from 
People v. Tribett
, 98 Ill. App. 3d 663, 672-73, 424 N.E.2d 688, 694-95 (1981), where, after a lawful 
Terry
 stop, the police observed defendant with his hand in the waistband of his pants and, after being instructed to remove his hand and put it where it could be seen, defendant dropped a packet of drugs to the ground.  In 
People v. Holman
, 157 Ill. App. 3d 764, 773, 510 N.E.2d 1139, 1144 (1987), the police observed defendants doing what they believed was a drug transaction.  The police lawfully approached the defendants to investigate and one of the defen­dants dropped two pills to the ground.  The officer seized the pills and arrested the defendants.  However, unlike here, in those cases, the police had not violated the defendants' fourth amend­ment rights when they observed the pills in plain view.

In summary, neither 
Terry
, section 108-1.01 of the Code, nor the 
plain view doctrine authorized the police to com­mence the search of defendant that prompted him to attempt to discard the cocaine.  Thus, the trial court's decision to deny defendant's motion to suppress was against the manifest weight of the evi­dence.  Consequently, the judgment of conviction is reversed.

As a result, we need not consider whether defendant is entitled to a $5-per-day credit against his $400 fine for time spent in pretrial detention.  725 ILCS 5/110-14 (West 1996).  However, the law is clear, as the State concedes that defendant would have been entitled to such a credit in the amount of $150 pursuant to 
People v. Woodard
, 175 Ill. 2d 435, 457, 677 N.E.2d 935, 945-46 (1997).

Reversed.

KNECHT and COOK, JJ., concur.