# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Cregan*, 2011 IL App (4th) 100477

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS DAX CREGAN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0477 |
| Filed | November 29, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motion to suppress the cocaine discovered in one of defendant's bags after he was arrested as he got off a train was affirmed, since defendant was carrying the bags when he was arrested on an outstanding warrant for failing to pay child support, the bags were within his reach at all times, even though he was handcuffed, the bags were not locked, he had not turned the bags over to the woman who met him, defendant was a known gang member, the arresting officers were concerned he might be carrying a weapon, the search took place at the train station and in his presence, and the search was not limited by the fact that the officers did not expect to find evidence of defendant's failure to pay child support but, rather, the officers had wide latitude to conduct a thorough search, including the container of hair gel in which the cocaine was found. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 09-CF-1014; the Hon. Charles G. Reynard, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Amber Gray, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Steigmann and Pope concurred in the judgment and opinion.

## OPINION

¶ 1    The trial court denied defendant Carlos Dax Cregan's motion to suppress evidence. Following a stipulated bench trial, the court found defendant guilty of unlawful possession of less than 15 grams of a controlled substance (cocaine) (720 ILCS 570/402(c) (West 2008)). The court sentenced defendant to an extended term of 5 1/2 years in prison. Defendant appeals, arguing the court erred in denying his motion to suppress because the search of his luggage was neither (1) a valid search incident to arrest nor (2) a lawful inventory search. We affirm.

¶ 2                          I. BACKGROUND

¶ 3    In November 2009, the State charged defendant by indictment with unlawful possession of less than 15 grams of a controlled substance (cocaine) (720 ILCS 570/402(c) (West 2008)). In December 2009, defendant filed a motion to suppress evidence, arguing the officers' search exceeded the scope of a search incident to arrest. In January 2010, the trial court held a hearing on defendant's motion to suppress, and the following evidence was introduced.

¶ 4    On November 3, 2009, officers received an anonymous tip defendant would be traveling by train to Normal, Illinois. The tipster informed officers defendant had an outstanding arrest warrant. Officers investigated the tip and learned defendant had an active civil arrest warrant for failure to pay child support. Officers also discovered defendant was an active gang member. Officer Kevin Kreger of the Normal police department and other officers were dispatched to the train station to arrest defendant. Kreger was a member of the ProActive Unit, which focused on drug and gang activity.

¶ 5    Kreger and two other members of the ProActive Unit located an individual matching defendant's description getting off a train. Defendant was carrying a laundry bag and

wheeling a luggage bag behind him. Kreger and two other officers approached defendant and ordered him to drop his bags. Defendant dropped both bags and placed his hands behind his back. Officers placed defendant in handcuffs.

¶ 6    Kreger testified he initially intended to take defendant's bags into police custody after arresting defendant. Kreger stated because defendant was alone, department policy required officers to take his possessions and conduct an inventory search. A female, later identified as Lindsey Collins, approached defendant "very briefly" after police made contact with him. Defendant asked officers if Collins could take his bags, and Kreger told him "we need to go through [the] bags first." Neither bag was locked. Kreger found a container of hair gel inside the "main compartment" of defendant's bag. Though he did not see anything suspicious inside the container, Kreger removed the lid and found suspected cocaine in a plastic bag inside. Kreger did not release defendant's luggage to Collins because he found contraband.

¶ 7    Officer Christopher Nyman of the Normal police department was a member of the ProActive Unit involved in defendant's arrest on November 3, 2009. Nyman testified defendant made contact with a female immediately before police approached him and placed him under arrest. Nyman also stated defendant complied with orders and placed his bags on the ground. When asked if defendant attempted to take control of his bags after he dropped them, Nyman responded, "No, he was in handcuffs."

¶ 8    Defendant testified he made contact with Collins immediately before police approached him. Defendant dropped both bags and placed his hands behind his back when ordered to by officers. After he was handcuffed, defendant asked the officers to release his bags to Collins, but officers told him they had to search the bags first. Defendant and his bags were moved to the side of the train station, where the bags were searched in defendant's presence.

¶ 9    The trial court denied defendant's motion, finding the bags were in defendant's immediate control during the arrest. The court explained defendant could not "insulate the property from being searched" by attempting to hand the bags off to another party. The court further found requiring officers to release the bags to Collins without searching them first potentially involved taking a weapon away from defendant and placing it in Collins's hands, which represented a serious risk to officer safety. During its analysis, the court emphasized defendant's status as a known gang member in evaluating the officer's actions.

¶ 10    In February 2010, the trial court held a stipulated bench trial. The court took judicial notice of testimony from the suppression hearing. In addition, the parties stipulated (1) the substance found inside the hair gel container in defendant's luggage contained 9.77 grams of cocaine, and (2) defendant confessed to possessing the cocaine in a taped interview with police officers. The court found defendant guilty of unlawful possession of less than 15 grams of cocaine.

¶ 11    In March 2010, the trial court sentenced defendant to an extended term of 5 1/2 years in prison. In April 2010, defendant filed a motion to reconsider his sentence. In May 2010, the court denied defendant's motion to reconsider his sentence.

¶ 12    This appeal followed.

¶ 13                                  II. ANALYSIS

¶ 14        On appeal, defendant argues the trial court erred in denying his motion to suppress because the search of his luggage was neither (1) a valid search incident to arrest nor (2) a lawful inventory search. The State contends the issue is forfeited because defendant failed to raise it in a posttrial motion. In the alternative, the State argues the search constituted a valid search incident to defendant's arrest, and the court properly denied defendant's motion to suppress.

¶ 15                        A. The State's Forfeiture Argument

¶ 16        Generally, both a trial objection and a posttrial motion raising an issue are required to preserve the issue for appeal. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). An issue not properly preserved will result in its forfeiture. *Id.* However, the court in *Enoch*, 122 Ill. 2d at 190, 522 N.E.2d at 1132, recognized the following exceptions to forfeiture: (1) constitutional issues properly raised at trial and cognizable in a postconviction petition, (2) sufficiency of the evidence challenges, and (3) plain errors. Relying on *Enoch*, this court stated "because defendant's contention that the court erroneously denied his motion to suppress is a constitutional issue, it is reviewable on appeal even though defendant failed to raise it in a written posttrial motion." *People v. Cox*, 295 Ill. App. 3d 666, 670, 693 N.E.2d 483, 485 (1999). Defendant's argument regarding the trial court's denial of his motion to suppress is not forfeited.

¶ 17                     B. The Constitutionality of the State's Search

¶ 18        When examining a trial court's decision regarding a motion to suppress, the reviewing court gives great deference to the trial court's factual findings but reviews *de novo* the court's ultimate decision on whether suppression is warranted. *People v. Luedemann*, 222 Ill. 2d 530, 542, 857 N.E.2d 187, 195 (2006). On a motion to suppress evidence, defendant, as the moving party, has the burden of proving the search and seizure were unlawful. *People v. Hoskins*, 101 Ill. 2d 209, 212, 461 N.E.2d 941, 942 (1984).

¶ 19                           1. *Searches Incident to Arrest*

¶ 20        The fourth amendment to the United States Constitution prohibits unreasonable searches and seizures which violate the right of the people to be secure in their persons, houses, papers, and effects. U.S. Const., amend. IV. Similarly, the Illinois Constitution guarantees the people the "right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, seizures, [and] invasions of privacy." Ill. Const. 1970, art. I, § 6. Illinois courts have interpreted the search and seizure language of the Illinois Constitution in a manner consistent with the United States Supreme Court's fourth-amendment decisions. See *People v. Caballes*, 221 Ill. 2d 282, 313-14, 851 N.E.2d 26, 44-45 (2006).

¶ 21        "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon

-4-

an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." (Internal quotation marks omitted.) *United States v. Knights*, 534 U.S. 112, 118-19 (2001). Warrantless searches and seizures are generally unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). A search incident to a lawful arrest may include a search of the person of the arrestee and the area within his immediate control. *Id.* The term " 'within his immediate control' " has been defined as "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The search-incident-to-lawful-arrest exception is justified by concerns for officer safety and the preservation of evidence. *Id.*

¶ 22 "The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of the facts and circumstances before him at the time without regard to his underlying intent or motivation." *Hoskins*, 101 Ill. 2d at 213-14, 461 N.E.2d at 943 (citing *Scott v. United States*, 436 U.S. 128, 136, 138 (1978)). As the United States Supreme Court explained in *Robinson*, 414 U.S. at 235:

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

¶ 23 The United States Supreme Court in *United States v. Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds in California v. Acevedo*, 500 U.S. 565, 580 (1991), stated "[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." The Court in *Chadwick*, 433 U.S. at 15, found a warrantless search of a 200-pound, locked footlocker conducted more than an hour after the defendant's arrest unreasonable. In *Hoskins*, 101 Ill. 2d at 217, 461 N.E.2d at 945, our supreme court dealt with the issue of whether a search of the defendant's purse was authorized by her lawful, custodial arrest. The court in *Hoskins*, 101 Ill. 2d at 214-15, 461 N.E.2d at 943-44, found the defendant's purse was immediately associated with her person, and the search was reasonable incident to the defendant's arrest, differentiating the defendant's purse from the footlocker in *Chadwick*. See also *United States v. Garcia*, 605 F.2d 349, 350 (1979) ("[A] warrantless search of the contents of hand-carried luggage, seized incident to and inspected contemporaneous with a lawful custodial arrest[,] does not constitute an impermissible invasion of privacy in

contravention of the Fourth Amendment."). The defendant in *Hoskins* was handcuffed when police searched her purse. *Hoskins*, 101 Ill. 2d at 212, 461 N.E.2d at 942.

¶ 24    Defendant, relying on the recent decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009), argues the search of his luggage was unreasonable because he was handcuffed and surrounded by three officers and could not have accessed the luggage when it was searched. Defendant further argues officers could not expect to find evidence of his failure to pay child support inside his luggage, and they were limited to scanning the interior for weapons. Even assuming the initial search was reasonable, defendant contends officers exceeded the scope of the search by opening the container of hair gel. See *People v. Seymour*, 84 Ill. 2d 24, 35, 416 N.E.2d 1070, 1075 (1981) (A search that is reasonable at its inception "may violate the fourth amendment by virtue of its intolerable intensity and scope."). Finally, defendant argues officers should have released the luggage to his female companion upon his request. We find defendant's reliance on *Gant* misplaced and disagree with his other contentions.

¶ 25    The United States Supreme Court recently stated "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 556 U.S. at ___, 129 S. Ct. at 1716. However, the narrow holding in *Gant* applies only to searches and seizures involving a vehicle the arrestee recently occupied. *Gant*, 556 U.S. at ___, 129 S. Ct. at 1723 (holding "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest"); see also *United States v. Lee*, No. 10-CR-30058, 2010 WL 5573614, at *6 (C.D. Ill. Nov. 10, 2010); *United States v. Harris*, No. 09 CR 0028-2, 2009 WL 3055331, at *4 (N.D. Ill. Sept. 21, 2009). Further, *Gant*'s language regarding the defendant's ability to access the area to be searched closely tracks the language of *Chadwick*, which was distinguished by the court in *Hoskins*, as discussed above. We find *Hoskins* is more on point as it analyzed the search of personal items and not vehicles.

¶ 26    Defendant was carrying the bags when he was arrested and was within arm's reach the entire time, though he was secured in handcuffs prior to the search. The bags were not locked and were associated with defendant's person, similar to the defendant's purse in *Hoskins*. The record shows the bags were in defendant's possession when he was approached by officers and were never turned over to another party. In addition, defendant was a known gang member, and Nyman testified to being concerned he might be carrying a dangerous weapon. The search was contemporaneous to defendant's arrest and took place at the train station, in his presence. We conclude the search was reasonable and valid incident to defendant's arrest.

¶ 27    Defendant next contends officers were limited to a brief search for weapons as they could not expect to find any evidence of defendant's failure to pay child support in the luggage. We conclude the scope of the search was not limited in any way by the absence of evidence of failure to pay child support as a justification for the search. The court in *Robinson*, 414 U.S. at 234-35, made it clear a search for weapons is just as important and thorough as a search for evidence. The mere fact an officer cannot expect to uncover evidence of the crime

charged during a search in no way limits the scope or intensity of the search. See *Robinson*, 414 U.S. at 234 (narrower *Terry* standards do not limit a search merely because officers do not expect to uncover evidence of the particular crime for which the defendant was arrested during the search).

¶ 28 Officers admitted they were not searching for evidence of the crime of failure to pay child support. This did not limit the search to a more restrictive sweep for weapons. Defendant's argument the officers' search should have been confined to a quick weapons check fails. The situation afforded officers wide latitude to conduct a thorough search of defendant's luggage, including the container of hair gel located inside.

¶ 29 We find defendant's argument the luggage should have been released to his female companion without being searched lacks merit. The idea the officers should have given possession of the luggage to an associate of a known gang member without first searching it goes against the overriding concern for officer safety. Defendant points to no authority for his contention officers were required to release the bags to his friend. Defendant possessed the luggage when approached by officers. The search was proper to insure officer safety prior to releasing the bags. When officers discovered contraband, they retained possession of the luggage.

¶ 30 *2. Inventory Searches*

¶ 31 Inventory searches are another exception to the general prohibition against warrantless searches. *People v. Gipson*, 203 Ill. 2d 298, 304, 786 N.E.2d 540, 544 (2003). In conducting an inventory search, officers "must be acting pursuant to standard police procedures." *Id.* An inventory search satisfies the fourth amendment "as long as the police regulations are reasonable and administered in good faith." *People v. Clark*, 394 Ill. App. 3d 344, 348, 914 N.E.2d 734, 737-38 (2009). Defendant argues the search of his luggage does not fall within the inventory search exception because Kreger was required to release the bag to Collins pursuant to Normal police department policy. The State does not address this issue in its brief. In light of our resolution of the previous issue we need not address the issue.

¶ 32 III. CONCLUSION

¶ 33 We affirm the trial court's judgment. As part of our judgment we grant the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 34 Affirmed.